UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKE YODER, DRONE DEER RECOVERY MEDIA, INC., and JEREMY FUNKE,

    Plaintiffs,

vs.

SHANNON LOTT, in her official capacity as Acting Director of the Michigan Department of Natural Resources,

    Defendant.

Case No. _____

HON.

DONNA G. MATIAS, Cal. Bar No. 154268
Email: DMatias@pacificlegal.org
ANDREW QUINIO, Cal. Bar No. 288101
Email: AQuinio@pacificlegal.org
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

## COMPLAINT

## INTRODUCTION

1. Mike Yoder is a lifelong hunter who developed a service to solve one of hunting's most frustrating problems—recovering a downed deer after it is mortally

1

wounded and runs off. Mr. Yoder's Ohio company, Drone Deer Recovery Media, Inc., finds deer carcasses using drones, which provide an efficient, effective, and minimally intrusive method for recovering lost game.

2.  Mr. Yoder seeks to expand his company's operations into Michigan. However, officials at the Michigan Department of Natural Resources (DNR) assert that operating his business would violate state law. Specifically, the Department claims that using drones to locate downed deer would violate Mich. Comp. Laws § 324.40111c, which prohibits drone use to effectuate the "taking" of an animal.

3.  DNR's interpretation of Mich. Comp. Laws § 324.40111c destroys a promising, innovative solution to deer carcass recovery and violates Plaintiffs' free speech rights as guaranteed by the First and Fourteenth Amendments to the United States Constitution. Plaintiffs bring this civil rights lawsuit to vindicate their constitutional rights.

**JURISDICTION AND VENUE**

4.  This action arises under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C § 1983. This Court has jurisdiction over these federal claims under 28 U.S.C. § 1331 (federal question) and § 1343(a) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

5.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred or will occur in this District and Defendant resides in this District.

## PARTIES

6. Plaintiff Mike Yoder is a United States citizen and resident of Dundee, Ohio. Mr. Yoder is the founder and Chief Operator of Drone Deer Recovery Media, Inc. (Drone Deer Recovery or DDR), a company that employs unmanned aerial vehicles (drones) to locate deer carcasses for hunters.

7. Drone Deer Recovery Media, Inc. is an Ohio corporation.

8. Plaintiff Jeremy Funke is a United States citizen and resident of Pinckney, Michigan, where he hunts deer and other game on both private and public land. Mr. Funke plans to use DDR's services to help recover downed deer during hunting season.

9. Defendant Shannon Lott is the Acting Director of the Michigan Department of Natural Resources. As Acting Director, Ms. Lott is empowered to enforce the laws of the State of Michigan regarding the taking of game. Mich. Comp. Laws § 324.1601. Ms. Lott is sued in her official capacity.

## FACTUAL ALLEGATIONS

**Plaintiffs Mike Yoder, Drone Deer Recovery, and Jeremy Funke**

10. Mr. Yoder is a hunter, entrepreneur, and drone enthusiast. His company, Drone Deer Recovery, solves one of hunting's most frustrating problems: recovering a downed deer that has expired in a location unknown to the hunter. Drone Deer Recovery utilizes drones—unmanned aerial vehicles—to find downed game.

11. Through Drone Deer Recovery's website, a hunter can contact a local affiliate "drone operator" to locate their lost deer. Using infrared cameras, Drone Deer

3

Recovery's drones locate downed deer by searching for static heat signatures. Drone Deer Recovery's drones then create a "location pin" with the deer's location coordinates and relay that tag to the hunter.

12. Drone Deer Recovery's drone service is non-intrusive—mostly operating at night, 400-feet in the sky—and more effective and reliable than tracking dogs or trail cameras.

13. Drone Deer Recovery's use of drones complies with applicable Federal Aviation Administration regulations.

14. In addition to providing location services for hunters like Plaintiff Jeremy Funke, Drone Deer Recovery sells drones to interested operators throughout the country. Drone Deer Recovery trains these operators in how to use the drones to locate downed game, with the intent that they will be able to establish their own location-service businesses as Drone Deer Recovery affiliates. Drone Deer Recovery currently has a roster of approximately 30 operators in ten states.

15. Mr. Yoder is ready, willing, and able to expand Drone Deer Recovery's operations into Michigan. The company has several independent contractors (trained drone operators) poised to begin providing Drone Deer Recovery's services in Michigan.

**Drone Deer Recovery and the Game Recovery Process**

16. After a deer is shot in a hunt, it often runs off and expires a significant distance from where the hunter encountered it. The hunter must then locate the deer to collect it.

4

17. This is common, and deer are often lost in a dense Michigan forest.

18. If a deer carcass is never recovered, the hunter will oftentimes, after a good faith effort to retrieve the carcass, shoot another deer. Because hunters are normally allowed to "take" only one deer per season, failing to recover a downed deer leads to needless waste.

19. Hunters may use tracking dogs or other methods such as trail cameras to locate their shot game, but these methods are more environmentally intrusive and less effective at finding a downed deer.

20. Drone Deer Recovery's services begin after a hunter shoots a deer and stows his weapons. The hunter logs on to Drone Deer Recovery's website, submits his or her contact information, location, approximate time the deer was shot, and any other information relevant to locating the deer. Once a Drone Deer Recovery drone operator receives this information and confirms availability, the hunter pays for the service online and the operator travels to the hunter's location.

21. After arriving on site, and before deploying the drone, the drone operator obtains additional information from the hunter that will guide the operator's search plan. The operator also provides hunters with a waiver that they must sign, affirming that they have shot a deer and believe it to be dead. If the hunter does not believe the animal is dead, the operator will not search until the following day.

22. Drone Deer Recovery's drones are equipped with a powerful long-zoom, infrared camera and lights that allow it to conduct its search nearly 400 feet above the ground in low light.

5

23.    Once the drone reaches its operating height, the drone operator scans the specified location for stationary heat signatures. When the drone identifies a heat signature resembling a downed deer, it activates its search lights to identify the signature.

24.    When a downed deer is located, the operator uses the drone to relay the deer's location coordinates to over a dozen Global Positioning System satellites to create a location pin. This location pin contains the geo-location or location coordinates of the downed deer.

25.    Once the location pin is created, the operator disseminates the information to the hunter using Google Maps or a similar mapping service.

26.    Drone Deer Recovery's drones are minimally intrusive to wildlife and hunters, making only ambient, nondescript noise. Drone Deer Recovery's reliance on heat signatures to locate downed game allows operators to perform recovery efforts at night when no other hunters are present.

### DNR's Interpretation of Michigan's Drone Statute Renders Plaintiffs' Activities Illegal

27.    DNR officials have advised Drone Deer Recovery that it is unlawful under state law to use drones in any manner related to hunting. This includes locating a deer *after* it has been shot.

28.    On or around January 3, 2023, a potential Drone Deer Recovery operator received an email from a DNR enforcement official informing him that using drones to locate downed deer is illegal in Michigan. On or around March 1, 2023, a different

potential Drone Deer Recovery operator asked DNR's Wildlife Division about the legality of using drones to collect downed deer. The Wildlife Division replied that the use of drones related to locating wildlife in any manner is illegal.

29. DNR relies on Mich. Comp. Laws § 324.40111c (Drone Statute) for its interpretation. That statute declares: "An individual shall not take game or fish using an unmanned vehicle or unmanned device that uses aerodynamic forces to achieve flight."

30. Under Mich. Comp. Laws § 324.40104, "take" is defined as: "to hunt with any weapon, dog, raptor, or other wild or domestic animal trained for that purpose; kill; chase; follow; harass; harm; pursue; shoot; rob; trap; capture; or collect animals, or to attempt to engage in such an activity."

31. A violation of the Drone Statute constitutes a misdemeanor. Punishment depends on the type of game taken. An individual who unlawfully takes a deer or elk, for example, faces up to 90 days in prison or a fine of up to $1,000. Mich. Comp. Laws § 324.40118.

32. DNR interprets "use" to include "locate." Thus, when a drone locates an animal's carcass after it has been downed by a hunter, the drone is being "used" to "collect" that animal, allegedly in violation of the Drone Statute. The collection of an animal's carcass is defined as a taking under Michigan law. Mich. Comp. Laws § 324.40104.

## CAUSE OF ACTION

## Violation of Plaintiffs' First Amendment

## Right to Freedom of Speech (42 U.S.C. § 1983)

33. Plaintiffs reallege and incorporate all preceding paragraphs.

34. An actual and substantial controversy exists between Plaintiffs and Defendant.

35. Drone Deer Recovery creates and disseminates information—the location of specific downed game—that previously did not exist.

36. DNR's interpretation of Michigan's Drone Statute is a content-based restriction on speech because it singles out a particular type of speech, namely location information pertaining to downed game, and prohibits its creation and dissemination if it will be used to collect the game.

37. DNR's interpretation of the Drone Statue against Plaintiffs serves no compelling government interest.

38. Even if DNR's interpretation of the Drone Statute advances a compelling government interest, the interpretation is not narrowly tailored to achieve that interest.

39. Plaintiffs have no adequate remedy at law to compensate for the loss of their fundamental First Amendment freedoms, and they will continue to suffer irreparable injury absent an injunction restraining Defendant's enforcement of the Drone Statute in a way that prohibits the creation and dissemination of certain information.

40. Accordingly, DNR's interpretation of Michigan's Drone Statute violates the First Amendment rights of Plaintiffs Yoder and Drone Deer Recovery.

41. Additionally, Plaintiff Funke has the right to receive information about a deer's location. However, DNR's interpretation of Michigan's Drone Statute forbids using location information from a drone to collect an animal's carcass under the threat of criminal penalty. Accordingly, DNR's interpretation of Michigan's Drone Statute violates Mr. Funke's First Amendment rights.

42. Plaintiffs are therefore entitled to declaratory and injunctive relief against continued enforcement and maintenance of Defendant's unconstitutional application of Michigan's Drone Statute.

## RELIEF SOUGHT

Wherefore, Plaintiffs respectfully request the Court enter judgment against Defendant as follows:

1. A declaration that the DNR's interpretation of Mich. Comp. Laws § 324.40111c, as applied to Plaintiffs, violates the First and Fourteenth Amendments to the United States Constitution;

2. A permanent injunction restraining Defendant and Defendant's officers, agents, affiliates, servants, successors, employees, and all other persons in active concert or participation with Defendant from enforcing Mich. Comp. Laws § 324.40111c against Plaintiffs in a manner that prevents the creation, dissemination, and receipt of certain information;

      3.      Judgment for Plaintiffs and against Defendant for the deprivation of their rights;

      4.      An award of Plaintiffs' costs and attorneys' fees under 42 U.S.C. § 1988; and

      5.      Any such further relief as the Court deems just and proper.

DATED: June 27, 2023.          Respectfully submitted,

                                      DONNA G. MATIAS
                                      ANDREW QUINIO
                                      Pacific Legal Foundation

                                        By  /s/ Donna G. Matias
                                      DONNA G. MATIAS CSB#154268

                                      *Attorneys for Plaintiffs* MIKE YODER, DRONE DEER RECOVERY MEDIA, INC., and JEREMY FUNKE