UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKE YODER, DRONE DEER

RECOVERY LLC, and

JEREMY FUNKE,                           Case No. 1:23-cv-00796

          Plaintiffs,           HON. PAUL MALONEY

   vs.

SCOTT BOWEN, in his official

capacity as Director of the Michigan

Department of Natural Resources,

          Defendant.

---

DONNA G. MATIAS, Cal. Bar No. 154268
Email: DMatias@pacificlegal.org
ANDREW QUINIO, Cal. Bar No. 288101
Email: AQuinio@pacificlegal.org
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

---

**AMENDED COMPLAINT**

**INTRODUCTION**

    1.    Mike Yoder is a lifelong hunter who developed a service to solve one of hunting's most frustrating problems—recovering a downed deer after it is mortally wounded and runs off. Mr. Yoder's Ohio company, Drone Deer Recovery LLC, finds

1

deer carcasses using drones, which provide an efficient, effective, and minimally intrusive method for recovering lost game.

2. Mr. Yoder seeks to expand his company's operations into Michigan. However, officials at the Michigan Department of Natural Resources (DNR) assert that operating his business would violate state law. Specifically, the Department claims that using drones to locate downed deer would violate Mich. Comp. Laws § 324.40111c, which prohibits drone use to effectuate the "taking" of an animal.

3. DNR's interpretation of Mich. Comp. Laws § 324.40111c destroys a promising, innovative solution to deer carcass recovery and violates Plaintiffs' free speech rights as guaranteed by the First and Fourteenth Amendments to the United States Constitution. Plaintiffs bring this civil rights lawsuit to vindicate their constitutional rights.

## JURISDICTION AND VENUE

4. This action arises under the First and Fourteenth Amendments to the United States Constitution, 42 U.S.C § 1983. This Court has jurisdiction over these federal claims under 28 U.S.C. § 1331 (federal question) and § 1343(a) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claim occurred or will occur in this District and Defendant resides in this District.

## PARTIES

6. Plaintiff Mike Yoder is a United States citizen and resident of Dundee, Ohio. Mr. Yoder is the founder and Chief Operator of Drone Deer Recovery LLC (Drone Deer Recovery or DDR), a company that employs unmanned aerial vehicles (drones) to locate deer carcasses for hunters.

7. Drone Deer Recovery LLC is an Ohio limited liability company.

8. Plaintiff Jeremy Funke is a United States citizen and resident of Pinckney, Michigan, where he hunts deer and other game on both private and public land.

9. Defendant Scott Bowen is the Director of the Michigan Department of Natural Resources. As Director, Mr. Bowen is empowered to enforce the laws of the State of Michigan regarding the taking of game. Mich. Comp. Laws § 324.1601. Mr. Bowen is sued in his official capacity.

## FACTUAL ALLEGATIONS

### Plaintiffs Mike Yoder, Drone Deer Recovery, and Jeremy Funke

10. Mr. Yoder is a hunter, entrepreneur, and drone enthusiast. His company, Drone Deer Recovery, solves one of hunting's most frustrating problems: recovering a downed deer that has expired in a location unknown to the hunter. DDR utilizes drones—unmanned aerial vehicles—to find downed game.

11. Mr. Funke intends and plans to use DDR's services to help recover downed deer during hunting season when necessary, but for the fact that it is currently illegal.

3

12. Through DDR's website, a hunter can contact DDR to find a pilot in their area to locate their lost deer. In Ohio, DDR employs three trained drone pilots, in addition to Mr. Yoder, to provide location services. DDR regularly receives requests for location services by hunters in Ohio, Michigan, and several other states, including Illinois, Iowa, Minnesota, Kansas, and Pennsylvania. Many of these requests specifically ask for Mr. Yoder.

13. Using a drone's infrared cameras and thermal imagery, DDR's drone pilots locate downed deer by searching for heat signatures. The pilot then switches to the drone's 200X zoom camera to identify the object giving off heat. If the deer is dead or the pilot believes it will be dead by the next morning, DDR's drones then create a "location pin" with the deer's location coordinates, and the pilot will relay that tag to the hunter.

14. DDR's drone service is non-intrusive—mostly operating at night, 400-feet in the sky—and often more effective and reliable than tracking dogs or trail cameras.

15. DDR's use of drones complies with applicable Federal Aviation Administration regulations.

16. In addition to providing location services for hunters like Plaintiff Jeremy Funke, DDR sells drones to interested pilots throughout the country. DDR trains these pilots in how to use the drones to locate downed game, with the intention that they will be able to establish their own location-service businesses.

17. Although Plaintiffs Mr. Yoder and DDR receive frequent requests for deer recovery services in Michigan, they reject them because they do not want to break the law. However, Plaintiffs are ready, willing, and able to operate in Michigan and would do so but for their fear that Defendant will enforce Mich. Comp. Laws § 324.40111c against them.

**Drone Deer Recovery and the Game Recovery Process**

18. After a deer is shot in a hunt, it often runs off and expires a significant distance from where the hunter encountered it. This is common, and deer are often lost in the dense Michigan forest.

19. Under such circumstances, the hunter must then locate the deer to collect it.

20. Michigan Wildlife Conservation Orders require hunters to make "reasonable attempts" to retrieve their game in order to prevent waste.

21. If a deer carcass is never recovered, the hunter will oftentimes, after a good faith effort to find the carcass, shoot another deer. Because hunters are normally allowed to "take" only a limited number of deer per season, failing to recover a downed deer leads to needless waste.

22. Hunters may use tracking dogs or other methods such as trail cameras to locate their shot game, but in many instances these methods are more environmentally intrusive and less effective at finding a downed deer.

23. Drone Deer Recovery's services begin after a hunter shoots a deer and stows his weapons. The hunter logs on to Drone Deer Recovery's website and enters their location to find a drone pilot near them. The website displays nearby pilots and

5

their contact information, including independent pilots unaffiliated with DDR. If the hunter is in Ohio, they will have the option of contacting Mr. Yoder or one of DDR's pilots. The hunter then contacts the pilot of their choice.

24. If a hunter requests the assistance of Mr. Yoder or one of DDR's pilots, the pilot will request the hunter's location, approximate time the deer was shot, and any other information relevant to locating the deer. Once the DDR pilot receives this information and confirms his or her availability, the pilot travels to the hunter's location.

25. DDR does not participate in and is not responsible for transactions between independent pilots and their customers.

26. DDR's drones are equipped with a powerful long-zoom, infrared camera, thermal imaging technology, and lights that allow it to conduct its search nearly 400 feet above the ground in low light.

27. Once the drone reaches its operating height, the drone pilot scans the specified location for heat signatures. When the drone identifies a heat signature resembling a downed deer, it activates its camera and search lights to identify the signature.

28. When a downed deer is located, the pilot uses the drone to relay the deer's location coordinates to over a dozen Global Positioning System satellites, creating a location pin. This location pin contains the geo-location or location coordinates of the downed deer.

29. Once the location pin is created, the pilot disseminates the information to the hunter using Google Maps or a similar mapping service, but only if the deer is dead or if it appears the deer will be dead by the next morning.

30. The drones used by DDR pilots are minimally intrusive to wildlife and hunters, making only ambient, nondescript noise. DDR's reliance on heat signatures to locate downed game allows pilots to perform recovery efforts at night when no other hunters are present.

## DNR's Interpretation of Michigan's Drone Statute Renders Plaintiffs' Activities Illegal

31. DNR officials have advised Drone Deer Recovery that it is unlawful under state law to use drones in any manner related to hunting. This includes locating a deer *after* it has been shot.

32. DNR actively enforces the ban on drones as articulated in the Drone Statute. For example, on or around January 11, 2023, a DNR enforcement official emailed Mike Cassells in response to an inquiry about using drones to locate downed deer. The email stated that using drones to locate downed deer in Michigan is illegal.

33. On or around March 1, 2023, another individual interested in using drone location, Daniel Schultz, asked DNR's Wildlife Division about the legality of using drones to locate downed deer in Michigan. The Wildlife Division replied that the use of drones related to locating wildlife in any manner is illegal.

34. DNR relies on Mich. Comp. Laws § 324.40111c (Drone Statute) for its interpretation. That statute declares: "An individual shall not take game or fish using an unmanned vehicle or unmanned device that uses aerodynamic forces to achieve flight."

35. Under Mich. Comp. Laws § 324.40104, "take" is defined as: "to hunt with any weapon, dog, raptor, or other wild or domestic animal trained for that purpose; kill; chase; follow; harass; harm; pursue; shoot; rob; trap; capture; or collect animals, or to attempt to engage in such an activity."

36. A violation of the Drone Statute constitutes a misdemeanor. Punishment depends on the type of game taken. An individual who unlawfully takes a deer or elk, for example, faces up to 90 days in prison or a fine of up to $1,000. Mich. Comp. Laws § 324.40118.

37. DNR interprets "use" to include "locate." Thus, when a drone locates an animal's carcass after it has been downed by a hunter, the drone is being "used" to "collect" that animal, allegedly in violation of the Drone Statute. The collection of an animal's carcass is defined as a taking under Michigan law. Mich. Comp. Laws § 324.40104.

## CAUSE OF ACTION

### Violation of Plaintiffs' First Amendment

### Right to Freedom of Speech (42 U.S.C. § 1983)

38. Plaintiffs reallege and incorporate all preceding paragraphs.

39. An actual and substantial controversy exists between Plaintiffs and Defendant.

40. Drone Deer Recovery creates and disseminates information—the location pin for specific downed game—that does not exist until a hunter provides DDR with certain information and the DDR operator employs the drone to search.

41. DNR's interpretation of Michigan's Drone Statute is a content-based restriction on speech because it singles out a particular type of speech, namely location information pertaining to downed game, and prohibits its creation and dissemination if it will be used to collect the game.

42. DNR's interpretation of the Drone Statute against Plaintiffs serves no compelling government interest.

43. Even if DNR's interpretation of the Drone Statute advances a compelling government interest, the interpretation is not narrowly tailored to achieve that interest.

44. Because Defendant's agents or employees have recently explicitly articulated the DNR's position on the legality of DDR's business, Plaintiffs Yoder and DDR fear that if they operate within the state, they will be subject to enforcement action and its consequences. They have therefore rejected and will continue to reject requests to provide services in Michigan so long as such services remain illegal.

45. Likewise, Plaintiff Funke fears that if he receives communications regarding the location of a downed deer, he, too, will be in violation of the law. Thus, Funke has not requested drone recovery services in Michigan; however, he would do so if such services were legal.

46. As long as Defendant regards DDR's activity unlawful under the Drone Statute, Plaintiffs, who do not wish to violate the law, are chilled from exercising their

First Amendment rights. Mr. Yoder and DDR are prohibited from operating their business in the state of Michigan.

47. Mr. Funke is prohibited from using drone recovery services such as DDR, which create and disseminate information to aid in the recovery of downed game for hunters like Mr. Funke.

48. Plaintiffs have no adequate remedy at law to compensate for the loss of their fundamental First Amendment freedoms, and they will continue to suffer irreparable injury absent an injunction restraining Defendant's enforcement of the Drone Statute in a way that prohibits the creation and dissemination of certain information.

49. Accordingly, DNR's interpretation of Michigan's Drone Statute violates the First Amendment rights of Plaintiffs Yoder and Drone Deer Recovery.

50. Additionally, Plaintiff Funke has the right to receive information about a deer's location. However, DNR's interpretation of Michigan's Drone Statute forbids using location information from a drone to collect an animal's carcass under the threat of criminal penalty. Accordingly, DNR's interpretation of Michigan's Drone Statute violates Mr. Funke's First Amendment rights.

51. Plaintiffs are therefore entitled to declaratory and injunctive relief against continued enforcement and maintenance of Defendant's unconstitutional application of Michigan's Drone Statute.

## RELIEF SOUGHT

Wherefore, Plaintiffs respectfully request the Court enter judgment against Defendant as follows:

1. A declaration that the DNR's interpretation of Mich. Comp. Laws § 324.40111c, as applied to Plaintiffs, violates the First and Fourteenth Amendments to the United States Constitution;

2. A permanent injunction restraining Defendant and Defendant's officers, agents, affiliates, servants, successors, employees, and all other persons in active concert or participation with Defendant from enforcing Mich. Comp. Laws § 324.40111c against Plaintiffs in a manner that prevents the creation, dissemination, and receipt of certain information;

3. Judgment for Plaintiffs and against Defendant for the deprivation of their rights;

4. An award of Plaintiffs' costs and attorneys' fees under 42 U.S.C. § 1988; and

5. Any such further relief as the Court deems just and proper.

DATED: February 2, 2024

Respectfully submitted,

DONNA G. MATIAS
ANDREW QUINIO
Pacific Legal Foundation

By  /s/ Andrew Quinio
ANDREW QUINIO CSB#288101

*Attorneys for Plaintiffs* MIKE YODER, DRONE DEER RECOVERY LLC, and JEREMY FUNKE