IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKE YODER, DRONE DEER RECOVERY
MEDIA, INC., and JEREMY FUNKE,

     No. 1:23-cv-00796

     Plaintiffs,

     HON. PAUL L. MALONEY

v.

SCOTT BOWEN, in his official capacity as
Director of the Michigan Department of
Natural Resources,

     Defendant.

_____

Donna G. Matias Cal. Bar No. 154268
Andrew Quinio Cal Bar No. 288101
Attorneys for Plaintiffs
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
(916) 419-7111
dmatias@pacificlegal.org
aquinio@pacificlegal.org

Nathan A. Gambill (P75506)
Echo Aloe (P86363)
Assistant Attorneys General
Attorneys for Defendant
Environment, Natural Resources,
and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
gambilln@michigan.gov
aloee1@michigan.gov

    /

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER
RULES 12(B)(1) AND 12(B)(6)**

Nathan A. Gambill (P75506)
Echo Aloe (P86363)
Assistant Attorneys General
Attorneys for Defendant
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
gambilln@michigan.gov
aloee1@michigan.gov

Date:  February 15, 2024

# TABLE OF CONTENTS

Page

Table of Contents.................................................................................................. i

Index of Authorities............................................................................................. ii

Statutes at Issue .................................................................................................. v

Concise Statement of Issues Presented ........................................................... vi

Controlling or Most Appropriate Authority.................................................... vi

Statement of Facts............................................................................................... 1

Legal Standard .................................................................................................... 5

Argument .............................................................................................................. 6

I.      Michigan law does not regulate the activity that Plaintiffs allege is
        entitled to constitutional protection................................................... 6

        A.      The Court lacks jurisdiction because Plaintiffs lack standing.............. 8

        B.      The State of Michigan is immune to Plaintiffs' suit because they
                do not satisfy the *Ex parte Young* exception to Michigan's
                immunity. ...................................................................................... 10

        C.      Plaintiffs fail to state a claim under the free speech clause
                because Michigan law regulates conduct, not speech.......................... 11

II.     Recent case law confirms that Michigan's statute is not subject to
        scrutiny under the free speech clause. ........................................... 14

Conclusion and Relief Requested.................................................................... 19

Certificate of Compliance ................................................................................ 20

# INDEX OF AUTHORITIES

Page

## Cases

*360 Virtual Drone Servs. LLC v. Ritter*,
  No. 5:21-cv-137-FL, 2023 WL 2759032 (E.D.N.C. Mar. 31, 2023) ................. 14, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 5

*Brown v. Kemp*,
  86 F.4th 745 (7th Cir. 2023) ............................................................................... 16, 17

*Children's Healthcare is a Legal Duty, Inc. v. Deters*,
  92 F.3d 1412 (6th Cir. 1996) ............................................................................... vi, 10

*Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*,
  508 F.3d 327 (6th Cir. 2007) ...................................................................................... 6

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
  473 U.S. 788 (1985) .................................................................................................. 11

*Country Mill Farms, LLC v. City of E. Lansing*,
  280 F. Supp. 3d 1029 (W.D. Mich. 2017) ......................................................... passim

*Ex parte Young*,
  209 U.S. 123 (1908) .................................................................................................. 10

*Hensley Mfg. v. ProPride, Inc.*,
  579 F.3d 603 (6th Cir. 2009) ................................................................................. 6, 12

*Hughes v. Oklahoma*,
  441 U.S. 322 (1979) .................................................................................................... 1

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................................................................... 9

*Nat'l Press Photographers Ass'n v. McCraw*,
  90 F.4th 770 (5th Cir. 2024) ......................................................................... 15, 16, 17

*Peatross v. City of Memphis*,
  818 F.3d 233 (6th Cir. 2016) ...................................................................................... 5

*Pennhurst State Sch. & Hosp. v. Halderman*,
  465 U.S. 89 (1984) .................................................................................................... 10

*People v. Zimberg,*
   321 Mich. 655 (1948) .................................................................. 1

*RMI Titanium Co. v. Westinghouse Elec. Corp.,*
   78 F.3d 1125 (6th Cir. 1996) ...................................................... 5

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.,*
   547 U.S. 47 (2006) .................................................................... 12

*Russell v. Lundergan-Grimes,*
   784 F.3d 1037 (6th Cir. 2015) .................................................... 5

*Shelby Advocs. for Valid Elections v. Hargett,*
   947 F.3d 977 (6th Cir. 2020) ...................................................... 8

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) .............................................................. vi, 8

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.,*
   551 U.S. 308 (2007) .................................................................. 6

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland,*
   535 U.S. 635 (2002) ................................................................ 11

*Will v. Mich. Dep't of State Police,*
   491 U.S. 58 (1989) .................................................................. 10

*Zemel v. Rusk,*
   381 U.S. 1 (1965) .................................................................... 16

## Statutes

Mich. Comp. Laws § 324.40103(1)(i) .............................................. 2

Mich. Comp. Laws § 324.40104(1) ......................................... v, 4, 7

Mich. Comp. Laws § 324.40107 ....................................................... 2

Mich. Comp. Laws § 324.40111c(2) ........................................ v, 3, 7

Mich. Comp. Laws § 324.40112(2)(c) ............................................. 2

Mich. Comp. Laws § 324.40113a(2) ................................................ 2

**Rules**

Fed. R. Civ. P. 12(b)(1).................................................................................5

Fed. R. Civ. P. 12(b)(6)............................................................................5, 6

**Constitutional Provisions**

Mich. Const. art. 4, §52.............................................................................1

## STATUTES AT ISSUE

**Mich. Comp. Laws § 324.40111c(2)**

An individual shall not take game or fish using an unmanned vehicle or unmanned device that uses aerodynamic forces to achieve flight or using an unmanned vehicle or unmanned device that operates on the surface of water or underwater.

**Mich. Comp. Laws § 324.40104(1)**

"Take" means to hunt with any weapon, dog, raptor, or other wild or domestic animal trained for that purpose; kill; chase; follow; harass; harm; pursue; shoot; rob; trap; capture; or collect animals, or to attempt to engage in such an activity.

## CONCISE STATEMENT OF ISSUES PRESENTED

Michigan law prohibits the use of drones to take game but does not prohibit drone users from telling others that they used a drone to take game.

1.   Plaintiffs seek an order prohibiting DNR officials from keeping drone users from telling others that they used a drone to locate a deer.  But Plaintiffs do not allege that DNR officials intend to do such a thing, and officials could still enforce the law if the Court issued such an order.  Do Plaintiffs have Article III standing if they do not allege an injury that would be redressed by the relief they seek?

2.   To avoid the State's Eleventh Amendment immunity, Plaintiffs must plead an ongoing violation of federal law by DNR officials.  Plaintiffs allege that they have a free speech right to tell others they used a drone to locate a deer, but Plaintiffs do not allege that DNR officials intend to violate that right.  So, Plaintiffs do not allege an ongoing violation of federal law.  Have Plaintiffs avoided the State's immunity to their lawsuit?

3.   DNR officials do not intend to prevent Plaintiffs from telling someone they used a drone to locate a deer.  DNR officials intend only to enforce the law that prohibits the use of a drone to locate a deer—which is conduct, not speech.  Since the free speech clause only applies to speech, not conduct, have Plaintiffs stated a claim for which relief can be granted?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

_Authority_:   *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016).

*Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412 (6th Cir. 1996).

*Country Mill Farms, LLC v. City of E. Lansing*, 280 F. Supp. 3d 1029 (W.D. Mich. 2017).

## STATEMENT OF FACTS

**Michigan's management of wild animals.**

Under Michigan's constitution, the "conservation and development of the natural resources of the state are hereby declared to be of paramount public concern in the interest of the health, safety and general welfare of the people."  Mich. Const. art. 4, § 52.  The wild animals in Michigan are some of the State's most important natural resources.  According to one estimate, hunting and fishing in Michigan generate more than $11 billion a year in economic activity, and support more than 135,000 jobs.[1]

Managing wild game is "an exercise of the police power inherent in the state." *People v. Zimberg*, 321 Mich. 655, 658 (1948) (citation omitted).  By law, "[a]ll animals found in [Michigan] . . . are the property of the people of the state."  Mich. Comp. Laws § 324.40105.  So, "an individual may acquire only such limited or qualified property interest therein as the state chooses to permit." *Zimberg*, 321 Mich. at 658.  And the State can continue to regulate "the use of or right of property in the game after it is taken or killed." *Id.* at 659–660 (collecting citations).  Federal courts have recognized that states did not surrender their sovereignty over wild animals when they joined the Union. *See, e.g., Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979).

_____

[1] See https://www.michiganbusiness.org/news/2019/11/michigan-hunters-head-to-the-woods-boost-statewide-economy/#:~:text=A%20recent%20study%20released%20by,more%20than%20135%2C000%20Michigan%20jobs (last accessed 2/5/2024).

Generally, animals for which there is a demand are designated as "game" animals.  Dozens of types of wild animals in Michigan are classified as game, including deer.  Mich. Comp. Laws § 324.40103(1)(i).  Both DNR and the Michigan Natural Resource Commission have regulatory authority to determine the dates, times, places, and methods people can use to take game animals.  *See, e.g.,* Mich. Comp. Laws §§ 324.40107; 324.40113a(2).  Many of those details are included in the regularly updated, nearly 200-page Wildlife Conservation Order.[2]  Section 3.100 of the Wildlife Conservation Order, for example, explains in detail for 15 pages that only certain types of deer may be taken at certain times of day and within certain dates of the year, with specific methods, and only by certain license holders.

Not all provisions regulating the taking of game animals are included in the Wildlife Conservation Order.  Many provisions are found in statute, and therefore cannot be changed by DNR or the Natural Resources Commission.  The provision at issue in this case is in a statute.  In 2015, the Michigan Legislature passed Senate Bills 54 and 55.  Senate Bill 54 updated Michigan's hunter harassment statute and made it unlawful for a person to use a drone "to affect animal or fish behavior in order to hinder or prevent the lawful taking of an animal or fish."  Mich. Comp. Laws § 324.40112(2)(c).  The bill analysis completed for the two bills stated that Senate Bill 54 arose because animal rights groups had started encouraging their

---

[2] https://www.michigan.gov/dnr/-
/media/Project/Websites/dnr/Documents/Orders/Wildlife-Conservation-
Order/ChapterIII.pdf?rev=f9475819704a47c58aa503f67bfe9a64&hash=5A9E0C8FE
7645E8BC70A897CA067630A.

members to use drones "to interfere with taking game, by maneuvering a [drone] to block a hunter's shot, for instance, or scaring away the game." (Ex. 1, 4/2/2015 Bill Analysis, p. 2.)

Senate Bill 55 amended the statute Plaintiffs challenge in this case. It made it unlawful for an individual to "take game or fish" with a drone. Mich. Comp. Laws § 324.40111c(2). The analysis stated that Senate Bill 55 clarified that the existing prohibition on using "aircraft to aid in taking" game extended to drones. (Ex. 1, 4/2/2015 Bill Analysis, p. 2.) It also stated that banning drones in the taking of game "would be consistent with fair chase principles," which, as an "example," would be violated if "a hunter used a [drone] to spot a deer," or "to chase or herd the deer toward the hunter for an easier kill." (*Id.*, p. 3.) The analysis further noted that multiple other states already banned drones in hunting, and that "local hunting groups have petitioned wildlife officials to outlaw" drones in hunting in three other states. (*Id.*)

In its entirety, the statutory provision added by Senate Bill 55 reads: "An individual shall not take game or fish using an unmanned vehicle or unmanned device that uses aerodynamic forces to achieve flight or using an unmanned vehicle or unmanned device that operates on the surface of water or underwater." Mich. Comp. Laws § 324.40111c(2). Note that the word "take" is a technical term. It refers not only to the act of killing an animal, but to most of the acts associated with doing so. As Plaintiffs correctly allege, "take" in Michigan "means to hunt . . . kill; chase; follow; harass; harm; pursue; shoot; rob; trap; capture; or collect animals, or

3

to attempt to engage in such an activity."  Mich. Comp. Laws § 324.40104(1);

(PageID.90, ¶ 35.)

**Plaintiffs' use of drones.**

Plaintiff Mike Yoder is an Ohio resident who uses drones to locate deer that have been shot.  (PageID.84–85, ¶¶ 1–2, 6, 10.)  He runs the company Drone Deer Recovery LLC, which is also a plaintiff.  (PageID.84–85, ¶¶ 1, 6.)  Mr. Yoder and Drone Deer Recovery use drones "to find downed game."  (PageID.84–86, ¶¶ 1, 10, 12–13.)  According to Plaintiffs, Drone Deer Recovery's "drones are equipped with a powerful long-zoom, infrared camera, thermal imaging technology, and lights that allow it to conduct its search nearly 400 feet above the ground in low light." (PageID.88, ¶ 26.)

First, Mr. Yoder or another pilot uses a drone to "locate" the deer. (PageID.85–86, 88, ¶¶ 6, 13, 27–28.)  Locating a deer does not require the creation or dissemination of the deer's location to someone else.  Instead, the drone's equipment sends a live feed to the drone user's screen.  (PageID.86, ¶ 13; PageID.88, ¶¶ 26–27.)  Only after using the live feed to conclude that "a downed deer [has been] located," does the pilot "then" use "the drone to relay the deer's location coordinates to" create "a location pin," and "disseminates the information to the hunter using Google Maps or a similar mapping service."  (PageID.86, ¶ 13; PageID.88–89, ¶¶ 28–29.)  Plaintiff Jeremy Funke is a Michigan resident who wishes to hire Mr. Yoder and Drone Deer Recovery so he can receive

"communications regarding the location of . . . downed deer." (PageID.85, 91, ¶¶ 8, 11, 45.)

Plaintiffs allege that they are entitled under the free speech clause to send and receive communications about the location of deer, and that Michigan's statutory ban on the use of drones to locate deer unconstitutionally infringes on those rights. (PageID.91–92, ¶¶ 40–50.) They seek "an injunction restraining Defendant's enforcement of the Drone Statute in a way that prohibits the creation and dissemination of certain information." (PageID.92, ¶ 47.)

## LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(1) when the Court lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Eleventh Amendment issues are jurisdictional in nature." *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015). For a Rule 12(b)(1) motion, the plaintiff carries the burden of proving that the court has subject-matter jurisdiction. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996).

Dismissal is proper pursuant to Federal Rule of Civil Procedure 12(b)(6) when a party's complaint does not advance a "facially plausible" claim with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016) (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is generally true that under Rule 12(b)(6) a court accepts all well-pleaded factual allegations in the complaint as true. But courts do not "accept as true a legal conclusion couched

as a factual allegation," mere labels or conclusions, or "formulaic recitation[s] of the elements of a cause of action." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (internal citations omitted).

Though a review under Rule 12(b)(6) generally considers only the pleadings, courts also consider documents references in the pleadings, and "matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.,* 551 U.S. 308, 322 (2007).  Courts typically take judicial notice of public records kept and published by the government.  *Com. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007).

## ARGUMENT

### I.    Michigan law does not regulate the activity that Plaintiffs allege is entitled to constitutional protection.

The key fact in this case is that Michigan law does not prohibit anyone from telling someone else that they used a drone to locate a deer.  It only prohibits a person from using the drone to locate the deer to begin with.  This distinction matters because Plaintiffs do not allege that they have a constitutional right to locate a deer with a drone—only that they have a right *to tell someone else* that they located a deer with a drone.  (PageID.91, ¶ 41.)  In other words, Michigan law does not prohibit the activity that Plaintiffs allege is entitled to constitutional protection.

In this as-applied challenge, Plaintiffs allege that Michigan's statute is "a content-based restriction on speech because it singles out a particular type of speech, namely location information pertaining to downed game, and prohibits its

creation and dissemination if it will be used to collect the game." (PageID.91, ¶ 41.) But contrary to Plaintiffs' allegations, Michigan law does not prohibit the "creation and dissemination" of "location information pertaining to downed game." (*See* PageID.91, ¶ 41.) The drone statute states that an "individual shall not take game . . . using [a drone]." Mich. Comp. Laws § 324.40111c(2). And "take" means "hunt . . . kill; chase; follow; harass; harm; pursue; shoot; rob; trap; capture; or collect animals, or to attempt to engage in such an activity." Mich. Comp. Laws § 324.40104(1). The law does not forbid anything about communication. For example, if a hunter is alone and uses a drone to locate a deer during her hunt, she has violated the drone statute—there is no need for her to even "create" a location pin, let alone communicate that pin to someone else for a violation of the statute to occur. Nor does the statute try to silence her if she *does* wish to tell others that she used a drone to locate a deer. If a DNR conservation officer writes her a ticket, it will not be because she *told someone* that she used a drone to locate a deer, but because she used a drone to locate a deer to begin with.

Plaintiffs' allegations confirm that distinction. Plaintiffs allege that "DNR officials have advised Drone Deer Recovery that it is unlawful under state law to use drones" in "locating a deer after it has been shot." (PageID.89–90, ¶¶ 31–33, 37.) Plaintiffs allege that DNR interprets the statute to be violated as soon as "a drone located an animal's carcass." (PageID.90, ¶ 37.) DNR officials have not pledged, and Plaintiffs do not allege, that DNR officials plan to issue citations to prevent hunters from *communicating to someone* that they had used a drone to

locate a deer while hunting.  That is because communicating about the conduct is not illegal—only the conduct itself is.

This key distinction means that Plaintiffs do not have a case, and there are three independent reasons why their lawsuit should be dismissed.  First, they lack standing under Article III's case or controversy requirement because they do not allege an injury that would be redressed by the relief they seek.  Second, they fail to bypass DNR's Eleventh Amendment immunity because they do not allege that DNR officials are trying to prohibit them from doing the activity they say is protected by the free speech clause.  And third, they fail to state a claim for which relief can be granted since the activity prohibited by Michigan law is conduct, not speech, and is not protected by the free speech clause.

### A.      The Court lacks jurisdiction because Plaintiffs lack standing.

This Court does not have jurisdiction under Article III unless Plaintiffs have standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016), *as revised* (May 24, 2016).  Plaintiffs "bear the burden of alleging facts establishing each element of standing."  *Shelby Advocs. for Valid Elections v. Hargett*, 947 F.3d 977, 981 (6th Cir. 2020) (citations omitted).  To obtain the "injunctive relief" they seek, Plaintiffs "must show a present ongoing harm or imminent future harm" that is "likely to be redressed by a favorable judgment."  *Id*.  Here Plaintiffs allege that DNR officials have threatened to enforce Michigan's prohibition on using a drone to "locate" deer.  (PageID.89–90, ¶¶ 31–33, 37.)  But locating a deer with a drone is not the activity Plaintiffs allege is protected by the free speech clause.  Instead, Plaintiffs allege

that they have a free speech right to *tell someone* that they located a deer using a drone.  (PageID.91, ¶ 41.)  And Plaintiffs do not allege that DNR officials have threatened to try to keep them from telling someone that they located deer with a drone.  So, Plaintiffs fail to allege on "ongoing harm or imminent future harm" of a constitutional nature.  *Shelby*, 947 F.3d at 981.

Additionally, even if the Court were to grant the injunction Plaintiffs request, it would not redress Plaintiffs' problem of wanting to operate their business in Michigan.  A plaintiff fails to satisfy the redressability requirement if the redress of the injury they allege "requires action," but the court order they seek is "not likely to produce that action."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 (1992).  Here, if the Court entered "an injunction restraining Defendant's enforcement of the Drone Statute in a way that prohibits the creation and dissemination of certain information" (PageID.92, ¶ 47), it would still be illegal in Michigan to locate a deer with a drone.  DNR officials could still issue a citation to Plaintiffs if they used a drone to locate a deer.  Plaintiffs would have, therefore, obtained an injunction enjoining DNR officials from doing something that Michigan law does not forbid, and that DNR officials are not doing and have not threatened to do.  And they still would not be able to operate their business lawfully because it depends on unlawful conduct not protected by the free speech clause.  Thus, Plaintiffs lack standing.

**B.    The State of Michigan is immune to Plaintiffs' suit because they do not satisfy the *Ex parte Young* exception to Michigan's immunity.**

Plaintiffs have sued the DNR director in his official capacity.  Generally, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  In other words, it is a suit against the State itself, which the Eleventh Amendment generally bars.  *Id.* at 66.  The most common exception to this immunity is the doctrine announced in *Ex parte Young*, 209 U.S. 123 (1908), whereby "a suit challenging the constitutionality of a state official's action is not one against the State." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984).  But "[c]ourts have not read *Young* expansively." *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) (citations omitted).  There is a "requirement of action" by the named state official.  *Id.* at 1416.  That is, to rely on the *Ex parte Young* exception to the Eleventh Amendment, a plaintiff must be able to point to action by the named state official showing that "the official [has] threaten[ed] and" is "about to commence proceedings" that would violate the federal constitution.  *Id.*, *citing Young*, 209 U.S. at 155–56.

Here, Plaintiffs do not allege that any DNR official (let alone Director Bowen) intends to take action that is unconstitutional.  As explained above, there is a difference between locating a deer with a drone (illegal) and telling someone about it (not illegal).  And Plaintiffs allege only that DNR officials have threatened enforcement of the ban on locating a deer, not that DNR officials have pledged to try

10

to keep people from telling someone that they located a deer.  Plaintiffs do not allege that they have a free speech right to locate a deer, only a right to tell someone else that they did so.  Thus, Plaintiffs failed to allege that DNR officials threaten to violate their free speech rights.

Plaintiffs seek to enjoin Director Bowen from doing something neither he nor anyone else as DNR has threatened to do, and something that is not illegal under the statute.  Because Plaintiffs have not alleged an "ongoing violation of federal law," their complaint does not satisfy the "straightforward inquiry" needed to pursue relief under the *Ex parte Young* exception to Michigan's immunity, and their suit is barred by the Eleventh Amendment.  *See Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citations omitted).

### C.  Plaintiffs fail to state a claim under the free speech clause because Michigan law regulates conduct, not speech.

Even if the Court decides Plaintiffs have standing and have avoided Michigan's immunity, the Court should still dismiss the complaint because the conduct forbidden by Michigan law is not protected by the First Amendment.  The "first step" in a free-speech analysis is to determine whether the government has "regulated speech."  *Country Mill Farms, LLC v. City of E. Lansing*, 280 F. Supp. 3d 1029, 1043 (W.D. Mich. 2017), *citing Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 797 (1985).  If not, then the "inquiry ends" because the challenged law does not implicate the free speech clause.  *Id.*

Here, as noted above, Plaintiffs allege that the statute is "a content-based restriction on speech because it singles out a particular type of speech, namely location information pertaining to downed game, and prohibits its creation and dissemination if it will be used to collect the game." (PageID.91, ¶ 41.)  But that allegation is the type of "legal conclusion couched as a factual allegation" that the Court does not "accept as true" for the purposes of Rule 12(b)(6).  *Hensley*, 579 F.3d at 609.

Contrary to Plaintiffs' allegations, Michigan law does not "prohibit" the "creation and dissemination" of "location information pertaining to downed game." (*See* PageID.91, ¶ 41.)  As explained above, the law does not forbid anything about communication.  Using a drone to locate a deer is conduct—not speech.  DNR officials have not pledged, and Plaintiffs do not allege, that DNR officials plan to issue citations to prevent hunters from *communicating to someone* that they had used a drone to locate a deer while hunting.  That is because communicating about the conduct is not illegal—only the conduct itself is.

Like the law at issue in one Supreme Court case where Congress had barred federal funding to law schools that refused entrance to military recruiters, Michigan's drone statute "neither limits what [hunters] may say nor requires them to say anything." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 60 (2006).  Like that law, Michigan's drone statute "affects what [hunters] must *do*, and not "what they may or may not *say*." *Id*.  Since the "regulation of conduct does

not violate the First Amendment," Michigan's drone statute does not violate Plaintiffs' free-speech rights.  *See id*. at 70.

Importantly, Plaintiffs cannot transform a law that prohibits conduct into a law that prohibits speech simply by speaking about the prohibited conduct.  The *Country Mills Farms* case from this Court is instructive on this point.  In that case, an apple vendor that also operated a wedding venue decided to bar same-sex weddings at its venue.  It announced its decision on its Facebook page.  A city where the vendor sold its apples then denied the vendor's application to participate in the city's market because of the vendor's "business practice" of prohibiting same-sex weddings.  *Country Mill Farms*, 280 F. Supp. 3d at 1044–1045.  The vendor sued, alleging violation of their free-speech rights because they were punished for what they posted to their Facebook page.  But this Court dismissed the free-speech claim, holding that, contrary to the vendor's allegations, the city did not try "to regulate [the vendor's] speech."  *Id*. at 1044.  The Court recognized that the city had punished the vendor because of its business practice, not because of what it said on its Facebook page *about* its business practice.  *Id*. at 1044–1045.  As the Court explained, "writing about a prohibited general business practice on Facebook does not transform that conduct into protected speech."  *Id*. at 1045.

The same is true in this case.  Mr. Yoder and Drone Deer Recovery wish to use a drone to locate a deer, and "then" tell their customer, Mr. Funke, what they did.  (PageID.86, ¶ 13.)  But Michigan law only forbids the first action, not the second.  Simply telling Mr. Funke that they used a drone to locate a deer "does not

transform that conduct into protected speech." *Country Mill Farms*, 280 F. Supp. 3d at 1045.  The statute at issue only regulates conduct, not speech.  That is why DNR's enforcement of the statute—even as alleged by Plaintiffs—targets only conduct, not speech.  For this reason, the First Amendment "inquiry ends," and the Court should dismiss Plaintiffs' first amended complaint for failure to state a claim. *See Country Mill Farms*, 280 F. Supp. 3d at 1043.

## II.   Recent case law confirms that Michigan's statute is not subject to scrutiny under the free speech clause.

Drone users elsewhere have also made constitutional challenges to laws regulating drone use.  Consistent with DNR's argument, the law emerging from those disputes confirms that courts draw a line between using a drone, and using a drone in a way that implicates the free speech clause.  Courts have held that laws that regulate the speech created using a drone are subject to scrutiny.  But laws that govern drone use are not subject to scrutiny because they govern conduct, not speech.

The case of *360 Virtual Drone Servs. LLC v. Ritter*, No. 5:21-cv-137-FL, 2023 WL 2759032 (E.D.N.C. Mar. 31, 2023) is about using drones in land surveying. North Carolina law regulates people who offer land surveying services and requires them to satisfy certain professional standards and obtain a license before selling their services to the public.  *Id*. at *1–*4.  Without obtaining a license, a company began using drones to capture complex aerial images and data that it sold to its clients.  *Id*. at *1–*2.  According to the board that regulated land surveyors, the

images amounted to the creation of "aerial orthomosaic maps; three-dimensional digital models of land and structures; and aerial images containing location, distance, volumetric, and elevation data," so "only licensed land surveyors" could sell the images to clients.  *Id*. at *8.  The drone company sued, alleging that the license requirement and enforcement threat violated their free speech rights.  The government apparently argued that the board's restrictions did not implicate the free speech clause, but the court disagreed.  The board was regulating the conveyance of images to clients, which was "protected expression," so "regulating" it "implicate[d] the First Amendment."  *Id*. at *9.  Unlike the surveying law in North Carolina, Michigan's statute does not regulate the conveyance of images to the public.

The case of *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 777 (5th Cir. 2024) is about using drones to report the news.  Texas passed two statutes: one was a no-fly law forbidding the "operation" of drones over sensitive locations (such as prisons and sports stadiums); the other was a surveillance law that explicitly forbade the use of a drone to "capture an image . . . with the intent to conduct surveillance on the individual or property captured in the image."  *Id*. at 777–778.  Journalists filed suit, challenging both laws under the free speech clause. The government did not seem to challenge the proposition that the surveillance law, which explicitly regulated the capturing of images, implicated the free speech clause.  *Id*. at 788–789.

But the parties disagreed about the no-fly law. The plaintiffs argued that their use of a drone was "speech." *Id.* at 783. The Fifth Circuit flatly rejected that argument, ruling that the "operation of a drone is not inherently expressive." *Id.* at 787. The plaintiffs also argued that "making it illegal to fly drones over sensitive sites" prevented "them from capturing newsworthy subjects cheaply and safely," because reporters often used drones to "captur[e] images from the air directly over those facilities." *Id.* at 788. The Fifth Circuit was "not persuaded." *Id.* It held that simply because conduct is a possible precursor to speech does not mean that conduct is protected by the free speech clause. *Id.* at 788. Citing the Supreme Court, the Fifth Circuit explained that "are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow." *Id.*, *citing Zemel v. Rusk*, 381 U.S. 1, 16–17 (1965). For example, making it unlawful to enter secure government buildings without clearance keeps journalists from gathering newsworthy information from those buildings, but that does not mean the law prohibiting unauthorized access implicates the First Amendment. *Id.* Michigan's statute is more like the no-fly law than the surveillance law, since Michigan's statute does not regulate communication.

The case of *Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023) is about the use of drones or other equipment to monitor hunting activity in Wisconsin. As explained above, the 2015 legislation that created the statute Plaintiffs challenge in this lawsuit amended Michigan's hunter harassment law to prohibit the use of drones to interfere with the taking of game in Michigan. (*Supra*, 2–3.) In 2016, Wisconsin

16

also amended its hunter harassment statute, but unlike Michigan, it did more than simply prohibit the use of drones to block a shot or scare game, it also prohibited using a drone to capture images. Specifically, Wisconsin forbade using "a drone" for the "[p]hotographing, videotaping, audiotaping, or through other electronic means, monitoring or recording the activities of the" hunter if done in a way "intended to impede or obstruct a person who is engaged in lawful hunting, fishing, or trapping." *Brown*, 86 F.4th at 757.

The government argued that the prohibitions in the statute reached "only conduct, not speech," so the free speech clause did not apply. *Id*. at 779. The Seventh Circuit disagreed, noting that the statute "target[ed] fundamental speech activities." *Id*. The court noted that plaintiffs were animal rights activists who "use[d] photography and audiovisual recording to try to affect public opinion," so a statute that expressly prohibited their ability to make the recordings necessarily implicated the free speech clause. *Id*.

These three cases confirm that Michigan's statute does not implicate the free speech clause. Michigan's statute does not expressly prohibit the dissemination of certain types of mapping imagery, like the law challenged in *360 Virtual Drone Servs. LLC*, 2023 WL 2759032 at *8. It does not prohibit using a drone to "capture an image" like the surveillance law challenged in *McCraw*, 90 F.4th at 777–778. And it does not prohibit using "a drone" for the "[p]hotographing, videotaping, audiotaping, or . . . monitoring or recording the activities of" a hunter, like the statute challenged in *Brown*, 86 F.4th at 757. Instead, Michigan's law is more like

the no-fly law in *McCraw*, which the Fifth Circuit held was the regulation of conduct and not speech because the "operation of a drone is not inherently expressive." 90 F.4th at 787.  And prohibiting conduct does not implicate the free speech clause simply because the conduct is a possible precursor to eventual speech. *Id*. at 788.  That holding is like this Court's holding in the apple vendor case, where it held that speaking about conduct "does not transform that conduct into protected speech." *Country Mill Farms*, 280 F. Supp. 3d at 1045.  Since the statute Plaintiffs challenge in this case regulates conduct, and not speech, it is not subject to scrutiny under the free speech clause.

## CONCLUSION AND RELIEF REQUESTED

Defendant requests that the Court dismiss Plaintiffs' complaint in its

entirety.

Respectfully submitted,

/s/ *Nathan A. Gambill*
Nathan A. Gambill (P75506)
Echo Aloe (P86363)
Assistant Attorneys General
Attorneys for Defendant
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
gambilln@michigan.gov
Date:  February 15, 2024          aloee1@michigan.gov

LF:  Yoder, Drone Deer Recovery (v DNR) WD/AG# 2023-0383182-A/Defendant's Brief in Support of Motion to Dismiss 2024-02-15

19

**CERTIFICATE OF COMPLIANCE**

As required by LCivR 7.2(b)(ii), the number of words in this brief as defined by LCivR 7.2(b)(i) is 4,676.  The brief was prepared using Microsoft Word for Office 365.

Respectfully submitted,

/s/ *Nathan A. Gambill*
Nathan A. Gambill (P75506)
Echo Aloe (P86363)
Assistant Attorneys General
Attorneys for Defendant
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
gambilln@michigan.gov
Date:  February 15, 2024        aloee1@michigan.gov