# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF
## MICHIGAN SOUTHERN DIVISION

MIKE YODER, DRONE DEER
RECOVERY LLC, and
JEREMY FUNKE,

                    Plaintiffs,

      vs.

SCOTT BOWEN, in his official
capacity as Director of the Michigan
Department of Natural Resources,

                  Defendant.

Case No. 1:23-cv-00796

HON. PAUL MALONEY

**RESPONSE TO DEFENDANT'S
MOTION TO DISMISS FIRST
AMENDED COMPLAINT**

_____

DONNA G. MATIAS, Cal. Bar No. 154268
Email: DMatias@pacificlegal.org
ANDREW QUINIO, Cal. Bar No. 288101
Email: AQuinio@pacificlegal.org
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

_____

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES............................................................................ ii

INTRODUCTION.........................................................................................1

STATEMENT OF FACTS............................................................................1

STATEMENT OF THE ISSUES ..................................................................4

SUMMARY OF ARGUMENT......................................................................4

STANDARD OF REVIEW ...........................................................................5

ARGUMENT .................................................................................................6

I.    Plaintiffs Have Stated a Claim That the Michigan Drone Statute
Violates the First Amendment...............................................................6

      A.    The Drone Statute Is a Content-Based Prohibition on Speech .................6

            1.    Plaintiffs Are Engaged in Speech Creation and Dissemination .....6

            2.    The Drone Statute Is a Content-Based Regulation of Speech .........8

            3.    Plaintiffs Challenge the Drone Statute's Prohibition on Their
Speech, Not Their Conduct ...........................................................9

      B.    The Drone Statute Prohibits the Receipt of Speech ...............................13

II.    Plaintiffs Have Standing to Bring Their Pre-Enforcement Challenge .............14

III.    Defendant Is Not Immune from Plaintiffs' Suit for Prospective Relief.............17

CONCLUSION ............................................................................................19

CERTIFICATE OF COMPLIANCE ..........................................................20

# TABLE OF AUTHORITIES

**Page**

## Cases

*360 Virtual Drone Servs. LLC v. Ritter*,
No. 5:21-CV-137-FL, 2023 WL 2759032
(E.D.N.C. Mar. 31, 2023) .................................................................. 13

*Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir. 2012) ........................... 7

*Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018) ........................... 7

*Ashcroft v. Free Speech Coal.*, 535 U.S. 234 (2002) ................................................ 6, 13

*Babbitt v. Farm Workers*, 442 U.S. 289 (1979) ........................................................ 15

*Bartnicki v. Vopper*, 532 U.S. 514 (2001) ................................................................. 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................... 6

*Boler v. Earley*, 865 F.3d 391 (6th Cir. 2017) ..................................................... 17–18

*Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023) ..................................................... 11–12

*Citizens United v. FEC*, 558 U.S. 310 (2010) ...................................................... 11–12

*City of Ladue v. Gilleo*, 512 U.S. 43 (1994) ............................................................. 11

*Country Mill Farms, LLC v. City of E. Lansing*,
280 F. Supp. 3d 1029 (W.D. Mich. 2017) ............................................................. 13

*DirecTV, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2007) ............................................... 6

*Dombrowski v. Pfister*, 380 U.S. 479 (1965) ........................................................... 15

*Ex parte Young*, 209 U.S. 123, 161, 160–62 (1908) ................................................. 18

*F.C.C. v. League of Women Voters of California*, 468 U.S. 364 (1984) ....................... 9

*Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322 (6th Cir. 2013) ............. 15

*Fields v. City of Phila.*, 862 F.3d 353 (3d Cir. 2017) ................................................. 7

*Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) .......................................... 15

*Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261 (1997) .................................... 18

*Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495 (1952) .......................................7

*Kaplan v. California*, 413 U.S. 115 (1973) ....................................................7

*Kleindienst v. Mandel*, 408 U.S. 753 (1972) ...............................................13

*Lichtenstein v. Hargett*, 83 F.4th 575 (6th Cir. 2023) .................................4, 9, 11–12

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ...........................................14

*Meyer v. Grant*, 486 U.S. 414 (1988) ......................................................5, 12

*Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*,
   460 U.S. 575 (1983) ......................................................................10

*Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770 (5th Cir. 2024) ..............11

*Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343 (6th Cir. 2007) .....................15

*R.A.V. v. St. Paul*, 505 U.S. 377 (1992) .........................................................8

*Reed v. Town of Gilbert*, 576 U.S. 155 (2015) ................................................8

*Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819 (1995) ...............8

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47 (2006) ....................12

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20 (1984) ........................................8

*Sorrell v. IMS Health Inc.*, 564 U.S. 552 (2011) ..................................4, 6, 8

*Stanley v. Georgia*, 394 U.S. 557 (1969) .................................................4, 13

*Steffel v. Thompson*, 415 U.S. 452 (1974) ...................................................17

*Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014) ...............................15

*United States v. Ritchie*, 15 F.3d 592 (6th Cir. 1994) ......................................6

*Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*,
   535 U.S. 635 (2002) ......................................................................18

*Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383 (1988) ...............................15

*W. Watersheds Project v. Michael*, 353 F. Supp. 3d 1176 (D. Wyo. 2018) .................9

*W. Watersheds Project v. Michael*, 869 F.3d 1189 (10th Cir. 2017) .........................7

*Waskul v. Washtenaw Cnty. Cmty. Mental Health,*
   900 F.3d 250 (6th Cir. 20018)..............................................................14

*Wilburn v. United States*, 616 F. App'x 848 (6th Cir. 2015) ........................6

## Court Rules

Fed. R. Civ. P. 12(b)(1) ............................................................................5–6

   12(b)(6)................................................................................................5–6

## Michigan Statutes

Mich. Comp. Laws § 324.40104 ..................................................................1

Mich. Comp. Laws § 324.40111c.................................................................1

## Constitutional Provision

U.S. Const. amend. I ...........................................................................*passim*

# INTRODUCTION

The First Amendment protects Plaintiff Mike Yoder's right to communicate the location of downed deer to hunters using drones. He exercises that right through his business, Drone Deer Recovery LLC (DDR). The First Amendment also guarantees hunters like Plaintiff Jeremy Funke the right to receive the communications of DDR. Mr. Funke uses the information DDR communicates to him to properly fulfill his duty to retrieve the deer he has shot.

The Michigan Department of Natural Resources (DNR) improperly applies a Michigan Statute that expressly only prevents using drones for *taking* game—Mich. Comp. Laws § 324.40111c—to Mr. Yoder's and Mr. Funke's communication of already *downed* game. Applied in this improper way, the statute regulates the content of Plaintiffs' speech and dictates the means with which they can create speech, in violation of the Constitution. On this Motion to Dismiss, it is clear that Plaintiffs have plausibly alleged how Defendant's interpretation violates their First Amendment right to create, share, and receive information, including location information of downed deer. Plaintiffs have standing to make this claim and Defendant is not immune from this claim for prospective relief. Defendant's Motion to Dismiss should be denied.

# STATEMENT OF FACTS

Mich. Comp. Laws § 324.40111c (Drone Statute) declares, "An individual shall not take game or fish using an unmanned vehicle or unmanned device that uses aerodynamic forces to achieve flight." (Dkt. 23, First Amended Complaint (FAC), PageID.90, ¶ 35.) Taking game under Mich. Comp. Laws § 324.40104 means: "to hunt with any weapon, dog, raptor, or other wild or domestic animal trained for that purpose;

kill; chase; follow; harass; harm; pursue; shoot; rob; trap; capture; or collect animals, or to attempt to engage in such an activity." (*Id.*, PageID.90, ¶ 36.) Nothing in the text of the Drone Statute prohibits the flying of drones in general, or the gathering and transmission of location information. (*Id.*, PageID.90, ¶¶ 35 and 36.) Indeed, Michiganders use drones in this manner every day. Nonetheless, DNR officials have twice confirmed that using drones to locate *downed* game is unlawful under the Drone Statute. (*Id.*, PageID.89, ¶¶ 32 and 33.) On January 11, 2023, a DNR enforcement official stated that using drones to locate deer is not legal in Michigan. (*Id.*, PageID.89, ¶ 32.) Then, on March 1, 2023, a representative of the DNR Wildlife Division stated that the use of drones related to locating wildlife in any manner is illegal. (*Id.*, PageID.89, ¶ 33.)

Mike Yoder is the owner of Drone Deer Recovery LLC, a business based in Ohio that uses drone technology to assist hunters to locate deer and other game after it has been shot. (*Id.*, PageID.83–85, ¶¶ 10 and 16.) Mr. Yoder's drones are equipped with long-zoom lenses, infrared cameras, thermal imaging technology, and lights to aid in identifying the location of downed game. (*Id.*, PageID.88, ¶¶ 26–28.) The thermal imaging technology allows Mr. Yoder to conduct searches in low light. (*Id.*, PageID.88, ¶ 26.)

When a hunter requests DDR's services, Mr. Yoder will obtain the hunter's location, approximate time the animal was shot, and other information that will help locate the downed animal. (*Id.*, PageID.88, ¶ 24.) Mr. Yoder will then travel to the hunter's location to conduct the search. (*Id.*)

After Mr. Yoder reaches the hunter's location and the hunter has stowed his or

her weapons, Mr. Yoder will fly the drone 400 feet above the ground and scan the area for heat signatures using the drone's thermal imaging technology. (*Id.*, PageID.88, ¶¶ 23 and 27.) Once the drone detects a heat signature resembling the hunter's animal, Mr. Yoder will activate the drone's 200X zoom camera and lights to view the animal and confirm that the animal is the one that the hunter shot. (*Id.*, PageID.86, 88, ¶¶ 13, 23, and 27.) If Mr. Yoder determines that it is the animal that the hunter shot and the animal is deceased or will be deceased by the following morning, he will have the drone relay the deer's coordinates to several Global Positioning System satellites to create a location pin. (*Id.*, PageID.86, 88, ¶¶ 13 and 28.) The location pin contains the geo-location or location coordinates of the downed game. (*Id.*, PageID.88, ¶ 28.) Mr. Yoder will then transmit this location pin to the hunter using Google Maps or another mapping service. (*Id.*, PageID.89, ¶ 29.)

Mr. Yoder's services are valuable to individuals like Jeremy Funke, a hunter in Michigan. (*Id.*, PageID.85, ¶ 8.) Mr. Funke needs the location information that Mr. Yoder can gather after a hunt because Michigan requires that hunters make reasonable attempts to retrieve their game. (*Id.*, PageID.87, ¶ 20.) Collecting dead game also prevents waste. (*Id.*, PageID.87, ¶¶ 20 and 21.) Drones are less intrusive to the surroundings and more effective at locating downed game than other methods like trail cameras or tracking dogs. (*Id.*, PageID.87, 89, ¶¶ 22 and 30.)

Michigan prohibits DDR from communicating the location of downed game because the State applies the statutory prohibition on hunting *with* drones to DDR's use of drones to communicate. (*Id.*, PageID.89, 90, ¶¶ 31–35.) If Mr. Yoder provides his location services to Mr. Funke, both fear that the State will punish them for violating

the Drone Statute, which can include prison or a fine of up to $1,000. (*Id.*, PageID.90–91, ¶¶ 36, 44 and 45.) Mr. Yoder will therefore not operate his business in Michigan, nor will Mr. Funke seek out the locating services that the business provides. (*Id.*, PageID.91, ¶¶ 44 and 45.)  If this Court were to enjoin DNR's interpretation of the Drone Statute, Mr. Yoder and Mr. Funke will use drones to locate downed game in Michigan. (*Id.*, PageID.85, 87, ¶¶ 11 and 17.)

## STATEMENT OF THE ISSUES

1.     Whether Plaintiffs' Amended Complaint states a claim that the Drone Statute violates the First Amendment.

2.     Whether Plaintiffs have standing to bring their claims that the Drone Statute violates the First Amendment.

3.     Whether Defendant is immune from Plaintiffs' suit to prevent future enforcement of the Drone Statute.

## SUMMARY OF ARGUMENT

Plaintiffs properly allege that the Drone Statute, as applied to them, prohibits them from using drones to collect, disseminate, and receive information about the location of downed deer.  As such, the Drone Statute violates Plaintiffs' free speech rights because the First Amendment protects their right to create and disseminate information, *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011), as well as receive information, *Stanley v. Georgia*, 394 U.S. 557, 564 (1969). Defendant's ban on Plaintiffs' speech is content-based because it specifically restricts information that pertains to and is used for locating downed deer, thus subjecting the ban to strict scrutiny. *Lichtenstein v. Hargett*, 83 F.4th 575, 586 (6th Cir. 2023). Moreover, the First Amendment also

protects Plaintiffs' preferred means of collecting and receiving that information, which Defendant infringes by applying the Drone Statute to Plaintiffs and forbidding them to use drones to locate downed game. *Meyer v. Grant,* 486 U.S. 414, 424 (1988).

Defendant's motion significantly misunderstands Plaintiffs' claims. Defendant is wrong when it argues that Plaintiffs are asserting a right "to tell someone else that they located a deer with a drone." (Dkt. 25, Motion to Dismiss ("Motion"), PageID.108.) Nor is it true that Plaintiffs are complaining about their ability to talk about their business practice of using drones to locate deer. (*Id.*, PageID.110–11, 113, 115.) Defendant essentially thinks that the speech at stake here is communication that a drone was used to locate a downed deer, rather than the actual location of the deer.

To the contrary, Mr. Yoder wants to communicate the pinpoint *location* of downed game based on information he gathers from his drones, and Mr. Funke wants to receive that communication. (FAC, PageID.91–92, ¶¶ 40–51.) Mr. Yoder is not concerned that Defendant is preventing him from talking about the services his business provides. He is concerned that he can't provide those services because the Defendant has banned the speech that makes those services possible.

Correctly asserted, Plaintiffs' allegations set forth claims under the First Amendment, and Plaintiffs have standing to assert them. The Motion to Dismiss should be denied.

## STANDARD OF REVIEW

Defendant has moved to dismiss for lack of standing under Federal Rule 12(b)(1) and for failure to state a claim under Federal Rule 12(b)(6).

When deciding a question of subject matter jurisdiction under Rule 12(b)(1), the

court must construe the pleadings in the light most favorable to the plaintiff. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). When considering a motion under Rule 12(b)(6), the Court must also "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015) (quoting *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). Plaintiffs' Complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Complaint does not require "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), nor probability, *Iqbal*, 556 at 678. Plaintiffs' claims must have "facial plausibility" such that "the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 662.

## ARGUMENT

### I. Plaintiffs Have Stated a Claim that the Michigan Drone Statute Violates the First Amendment

#### A. The Drone Statute Is a Content-Based Prohibition on Speech

##### 1. Plaintiffs Are Engaged in Speech Creation and Dissemination

The Drone Statute abridges the right of Mr. Yoder and DDR to create and disseminate information, which the First Amendment protects. *Sorrell*, 564 U.S. at 570 ("This Court has held that the creation and dissemination of information are speech within the meaning of the First Amendment"). "If the acts of disclosing and publishing information do not constitute speech, it is hard to imagine what does fall within that

category, as distinct from the category of expressive conduct." *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001).

The essence of what Mr. Yoder does is recording and filming, albeit with an advanced device that flies 400 feet in the air. The Supreme Court has long recognized that the First Amendment views these activities as speech. *Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 502 (1952) ("[E]xpression by means of motion pictures is included within the free speech and free press guaranty of the First and Fourteenth Amendments."); *Kaplan v. California*, 413 U.S. 115, 119 (1973) ("The Court has applied similarly conceived First Amendment standards to moving pictures, to photographs, and to words in books."). For that reason, many courts have recognized the *processes* required for public recording and note-taking are protected by the First Amendment. *See, e.g., Fields v. City of Phila.*, 862 F.3d 353, 358 (3d Cir. 2017) ("The First Amendment protects actual photos, videos, and recordings … and for this protection to have meaning the Amendment must also protect the act of creating that material."); *Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) (making an audio or audiovisual recording is corollary to the right to disseminate the resulting recording.); *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1203 (9th Cir. 2018) ("Audiovisual recordings are protected by the First Amendment…"); *W. Watersheds Project v. Michael*, 869 F.3d 1189, 1196 (10th Cir. 2017) ("[a]n individual who photographs animals or takes notes about habitat conditions is creating speech in the same manner as an individual who records a police encounter.").

Under these precedents there is no question that DDR's business implicates the First Amendment. DDR uses drones to create and disseminate information about a

downed animal's location to hunters so that they can collect the animal. (FAC, PageID.86, ¶ 13.) That information consists of a location pin marking the animal's coordinates on a mapping service and observations that operators like Mr. Yoder relay to their clients. (*Id*.) Mr. Yoder generates this location information using the drone's infrared cameras, long range zoom lenses, and thermal imagery. (*Id*., PageID.86, 88, ¶¶ 13, 26.). If Mr. Yoder shares this information with hunters to collect a downed animal in Michigan, Defendant will punish him with a fine or charge him with a misdemeanor. (FAC, PageID.89–90, ¶¶ 32–35.).

Since Defendant's application of the Drone Statute bans Mr. Yoder from communicating the speech he creates, it infringes his right to create and disseminate information. *Sorrell*, 564 U.S. at 568 (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32 (1984) ("An individual's right to speak is implicated when information he or she possesses is subjected to 'restraints on the way in which the information might be used' or disseminated.")). And as speech, the government cannot discriminate against it because of its content. *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 828–30 (1995). Yet, that is precisely what the Drone Statute does.

### 2. The Drone Statute Is a Content-Based Regulation of Speech

Speech regulations are content-based if they "target[s] speech based on its communicative content"—that is, if they "appl[y] to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Content-based restrictions are presumptively invalid, *R.A.V. v. St. Paul*, 505 U.S. 377, 395 (1992), and are subject to strict scrutiny, s*ee Lichtenstein*,

83 F.4th at 586.

The Drone Statute is presumptively invalid because it targets Plaintiffs' speech based on its content. Per the statute, an individual cannot use a drone to specifically "take" game, which DNR has interpreted to include locating downed game, or even attempting to do so. (FAC, PageID.90, ¶¶ 34–35.) Conversely, Mr. Yoder and Mr. Funke could use a drone for any number of other purposes. The only way a DNR official would be able to determine whether the creation and transmission of the drone communications is prohibited by the statute is by examining the content of the communications the drone disseminates.

For instance, Plaintiffs could use a drone to take aerial photos of trees, or even aerial photos of deer during hunting season—neither of which the statute forbids. A DNR official would not know without viewing the content of the drone's communications. The necessity of examining the content of the drones to determine if the Drone Statute has been violated demonstrates that the Drone Statute is a presumptively invalid content-based prohibition on speech. *See F.C.C. v. League of Women Voters of California*, 468 U.S. 364, 383 (1984); *see also W. Watersheds Project v. Michael*, 353 F. Supp. 3d 1176, 1187–88 (D. Wyo. 2018) (finding that a statute prohibiting the collection of "resource data" was content-based because its applicability depended on whether collected data pertained to land use). Because the Drone Statute is a content-based regulation of speech, it must meet strict scrutiny to be constitutional. *Lichtenstein*, 83 F.4th at 586.

### 3. Plaintiffs Challenge the Drone Statute's Prohibition on Their Speech, Not Their Conduct

The Drone Statute's prohibitions on non-expressive conduct do not preclude Plaintiffs from challenging its separate prohibitions on speech. The statute's restraints on conduct do not make the speech activity it also restrains beyond the reach of the First Amendment. For instance, the Drone Statute's presumptive restriction on using drones to physically kill an animal, which is unprotected conduct, does not make the speech activity of locating downed game that it also prohibits beyond the First Amendment's protection. Protected speech activity does not lose its protection when it is restrained by a statute that also restrains unprotected conduct even if both the speech and conduct are achieved through the same means. As such, Defendant's attempt to separate Mr. Yoder's speech from the means he uses to create that speech fails.

Since Mr. Yoder depends on a drone to create and convey speech, Defendant abridges Mr. Yoder's speech activity by restricting his use of drones. "If, for example, the government banned the sale of ink for the use in political pamphlets, it ostensibly would be regulating conduct—the sale of a commodity.... But the Court would rigorously review this law because it targets certain speakers by burdening the written words for which they will use the ink." *Id.*; *see also Minneapolis Star & Tribune Co. v. Minn. Comm'r of Revenue*, 460 U.S. 575, 582 (1983) (holding that a tax on ink and paper "burdens rights protected by the First Amendment."). Here, Defendant's application of the drone ban restricts Mr. Yoder's ability to create and convey location information. The State cannot burden Mr. Yoder's speech activity by directly burdening the means or inputs he uses to create and disseminate that speech under the pretense that it is merely regulating conduct.

Even if it were true that the Drone Statute only *incidentally* burdened speech—which it is not—dismissal would be inappropriate. The Court would still need to rigorously review the regulation to determine if the resulting burden on the speech violates the First Amendment. *Lichtenstein*, 83 F.4th at 585. After all, burdens on speech may occur "at different points in the speech process." *Citizens United v. FEC*, 558 U.S. 310, 336 (2010). As such, the Supreme Court has "voiced particular concern with laws that foreclose an entire medium of expression," *City of Ladue v. Gilleo*, 512 U.S. 43, 55 (1994), and rigorously reviews government restrictions on the "inputs" that speakers use to express a message. *Lichtenstein*, 83 F.4th at 585.

Defendant's cited caselaw does not say differently. The court in *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 788 (5th Cir. 2024), held that a no-fly law restricting *where* drones could be flown was not related to speech nor inherently expressive activity. But the Drone Statute here is significantly different than the no-fly law there. Here, the statute limits what an individual may do with a drone, not where they can operate it. And those limits on what an individual may do suppress ineluctable expressive activity that Plaintiffs engage in. Moreover, the Drone Statute's restriction on how a drone may be used requires the State to look at the content of the information the drone collects, but the no-fly law's restrictions on where a drone may fly is content-neutral.

*Brown v. Kemp*, 86 F.4th 745 (7th Cir. 2023) is also no help to Defendant. In that case, a statute intended to protect hunters from harassment prohibited the use of drones for "photographing, videotaping, audiotaping" them and "maintaining a visual or physical proximity" to them. *Id.* at 756. The court explained that the activity of

maintaining a visual or physical proximity to hunters was also protected because "conduct and activities *necessary for expression*" were equally deserving of First Amendment Protection (emphasis added). *Id*. at 779. Likewise here, the First Amendment protects DDR's use of drones because they are necessary to its speech activity of collecting, sharing, and receiving location information.[1] Protecting activities essential to expression conforms with the recognition that speech restraints "may operate at different points in the speech process," *Citizens United,* 558 U.S. at 336, and include limits on speech inputs or the means used for expression, *Lichtenstein*, 83 F.4th at 585.

None of the cases Defendant cites involve the creation and dissemination of speech. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc*., 547 U.S. 47, 61–70 (2006), addressed whether conditioning law schools' receipt of federal funds on giving military recruiters access to their campuses is compelled speech, and whether denying such access is expressive speech and expressive association. Here, Mr. Yoder is alleging that Defendant is prohibiting him and his business from collecting and conveying certain information, not that Defendant is compelling him to express certain messages as a

---

[1] Importantly, the existence of other means that Mr. Yoder and DDR could utilize to collect and convey location information does not remove First Amendment protections from their chosen means of communication. *Meyer*, 486 U.S. at 424. Defendant appears to believe that it does, asserting that Mr. Yoder could still tell others he located a deer, just not with a drone. (Motion, PageID.115.) Michigan's ban on drones to collect downed game forecloses an effective form of communication (FAC, PageID.86, ¶ 14), and the access to more burdensome mediums like trail cameras or tracking dogs does not excuse the Defendant for burdening Mr. Yoder's preferred medium. The First Amendment protects Mr. Yoder's right "not only to advocate [his] cause but also to select what [he] believe[s] to be the most effective means for so doing." *Meyer*, 486 U.S. at 424.

condition of receiving a benefit.[2]

Similarly misplaced is *Country Mill Farms, LLC v. City of E. Lansing*, 280 F. Supp. 3d 1029, 1044–45 (W.D. Mich. 2017). There, the court found that defendant city lawfully rejected plaintiff's vendor application pursuant to an anti-discrimination ordinance because of plaintiff's business practice of refusing to host same-sex weddings. *Id*. The rejection had nothing to do with plaintiff writing about those business practices on social media. *Id*. In contrast, Mr. Yoder is alleging that Defendant prevents him from pursuing and disseminating the information that his general business practice generates. He does not allege that Defendant threatens his right to communicate about his general business practice.

## B.     The Drone Statute Prohibits the Receipt of Speech

The Drone Statute likewise abridges Mr. Funke's right to receive the information that Mr. Yoder creates and disseminates. *Stanley*, 394 U.S. at 564 (1969) ("It is now well established that the Constitution protects the right to receive information and ideas."); *see also Kleindienst v. Mandel*, 408 U.S. 753, 763 (1972) (First Amendment protects the receipt of information and ideas); *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 245 (2002) ("As a general principle, the First Amendment bars the government

---

[2] Plaintiffs' location information that the Drone Statute prohibits is more akin to the measurable or orthomosaic information that the drone photographer captured with drones in *360 Virtual Drone Servs. LLC v. Ritter*, No. 5:21-CV-137-FL, 2023 WL 2759032, at *9 (E.D.N.C. Mar. 31, 2023). Both there and here the First Amendment is implicated because the state is regulating the creation and use of drones for the creation and dissemination of speech. ("Thus, the court holds as a matter of law that plaintiffs have established that the use of drones to capture images for the purpose of conveying 'orthomosaic' or 'measurable' information is protected expression and, by regulating this activity, the Act implicates the First Amendment.")

from dictating what we see or read or speak or hear.").

Defendant does not dispute that Mr. Funke's right to receive location information is protected speech. He instead mischaracterizes the type of information that Mr. Funke wants to receive.[3] Mr. Funke is not interested in hiring Mr. Yoder or DDR to tell him that a drone was used to locate a deer, as Defendant asserts; Mr. Funke wants to know where the deer he legally shot is located, and he wants to hire Mr. Yoder and DDR to use a drone to collect and disseminate that location information. He will not be paying Mr. Yoder just to hear that drones were used. That would not help him avoid losing the deer when it runs off after it is shot. (FAC, PageID.87, ¶ 18.)

Michigan's unconstitutional intrusion on Mr. Funke's right to receive location information from Mr. Yoder's drones is a proper claim under the First Amendment that the Court cannot dismiss.

## II.    Plaintiffs Have Standing to Bring Their Pre-Enforcement Challenge

The requisite elements of Article III standing are well established: A plaintiff must show (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) that is likely to be redressed by the requested relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Further, there are no heightened pleading standards to establish standing. *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 900 F.3d 250, 255 n.3 (6th Cir. 20018).

Standing is relaxed in claims for First Amendment violations because of a

_____

[3] Defendant states, "Mr. Yoder and Drone Deer Recovery wish to use a drone to locate a deer, and 'then' tell their customer, Mr. Funke, what they did." (Motion, PageID.115.) This again is not what Plaintiffs allege in their Amended Complaint.

judicial prediction or assumption that the very existence of the violative policy may cause others to refrain from constitutionally protected speech or expression. *Faith Baptist Church v. Waterford Twp.*, 522 F. App'x 322, 330 (6th Cir. 2013). "The prospect of prior restraint and resulting self-censorship can itself constitute the required actual injury." *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343, 351 (6th Cir. 2007). Chilled speech or self-censorship are thus injuries sufficient to confer standing in pre-enforcement challenges to First Amendment violations. *See, e.g.*, *Dombrowski v. Pfister*, 380 U.S. 479, 486–87 (1965); *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392 (1988). Moreover, Plaintiffs are not required to show that they will win on the merits of their constitutional claims. *See Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010). To have standing, and to avoid confusing standing with the merits, Plaintiffs' intended course of conduct need only be "arguably" affected by constitutional interests, and "arguably" proscribed by the challenged statute. *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979).

In a pre-enforcement challenge that Plaintiffs mount here, Plaintiffs satisfy the injury-in-fact requirement when they allege an "'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt*, 442 U.S. at 298).

Plaintiffs satisfy the requirements for standing to bring a pre-enforcement challenge against Defendant's First Amendment violation. First, Defendant injures Mr. Yoder and DDR in two ways: by chilling speech and by forcing them to forego business opportunities in Michigan. Mr. Yoder and DDR would like to collect and

communicate the location of downed game to clients in Michigan but Defendant's Drone Statute prohibits them from doing so. (FAC, PageID.91, ¶ 44.) Mr. Yoder would operate in Michigan if he did not fear enforcement of the Drone Statute against him and his company; however, he rejects requests for his services from hunters in the state. (FAC, PageID.87, ¶ 17).

With respect to Mr. Funke, the statute blocks him from hiring Mr. Yoder and DDR to create and disseminate location information about any deer he shoots. The ban on his ability to receive that information—which would allow him to more easily comply with Michigan law mandating he collect his downed game—infringes on his First Amendment rights. Mr. Funke desires—and would use—the information that Mr. Yoder and DDR want to create and communicate to him. (FAC, PageID.85, 91, ¶ 44.) Plaintiffs are not concerned with merely telling someone about using a drone or hearing that someone used a drone, as Defendant insists.[4] Mr. Yoder's business of communicating where downed deer are located and Mr. Funke's ability to collect his game suffer because the statute silences the desired information.

Defendant poses a substantial threat of enforcing the prohibitions against Plaintiffs. Defendant confirms this, asserting that "DNR officials could still issue a citation to Plaintiffs if they used a drone to locate a deer." (Motion, PageID.111). This

---

[4] Defendant disputes Plaintiffs' injury by again misstating Plaintiffs' claims, asserting, "Instead, Plaintiffs allege that they have a free speech right to tell someone that they located a deer using a drone.… And Plaintiffs do not allege that DNR officials have threatened to try to keep them from telling someone that they located deer with a drone." (Motion, PageID.110–111.) This is not what Plaintiffs allege in their Amended Complaint.

reinforces Plaintiffs' allegations, demonstrating Defendant's intention to enforce the statute as DNR interprets it. Additionally, statements by DNR officials to potential drone users around January 11, 2023, and March 1, 2023, indicate that using drones to locate downed deer is illegal. (FAC, PageID.89, ¶¶ 32 and 33). The substantial threat of enforcement by Defendant, even absent actual enforcement, suffices for standing purposes. A Plaintiff need not "first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights." *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).

Second, Plaintiffs' injuries are fairly traceable to Defendant, as Plaintiffs allege Defendant is responsible for and will enforce the Drone Statute (FAC, PageID.85, 91, and 92, ¶¶ 11, 45, and 47), and Defendant again confirms this (Motion, PageID.111.)

Finally, enjoining Defendant from enforcing the Drone Statute against Plaintiffs would undoubtedly redress Plaintiffs' injuries since Mr. Yoder would be able to collect, create, and communicate location information and Mr. Funke would be able to receive that information.

Plaintiffs have established a redressable injury in fact and therefore have standing.

## III. Defendant Is Not Immune from Plaintiffs' Suit for Prospective Relief

Defendant does not have Eleventh Amendment Immunity because Plaintiffs allege that Defendant is engaged in an ongoing violation of the First Amendment and seek prospective relief from that violation. *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017). Sovereign immunity protects state officials from suit, but an exception to this immunity applies when a plaintiff brings a claim for prospective relief against a state

official sued in his or her official capacity to prevent future federal constitutional or statutory violations. *Id*. at 410–12 (*citing Ex parte Young*, 209 U.S. 123, 161, 160–62 (1908)). To determine whether this exception applies, the court need only "conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 636, (2002) (*quoting Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 298–299 (1997)). The court does not need to analyze the merits of Plaintiffs' claims, as an allegation of an ongoing violation of federal law where the requested relief is prospective is ordinarily sufficient. *Id*. at 646.

Plaintiffs' Amended Complaint is brought against Defendant in his official capacity. (FAC, PageID.85, ¶ 9.) Plaintiffs allege that Defendant will violate the First and Fourteenth Amendment by enforcing the Drone Statute against them and burdening their free speech right to collect and share location information. (FAC, PageID.84, 89–92, ¶¶ 4, 31–51.) This is the ongoing violation of federal law that Plaintiffs allege and Defendant gets wrong.[5] Plaintiffs seek prospective relief in the form of a permanent injunction restraining Defendant from enforcing the Drone Statute against Plaintiffs. (FAC, PageID.93, ¶ 2.)

---

[5] Defendant's assertion that there is no ongoing violation of federal law is again premised on its misstatement of Plaintiffs' allegations of that violation. Defendant incorrectly states, "Plaintiffs allege only that DNR officials have threatened enforcement of the ban on locating a deer, not that DNR officials have pledged to try to keep people from telling someone that they located a deer. Plaintiffs do not allege that they have a free speech right to locate a deer, only a right to tell someone else that they did so." (Motion, PageID.112–13.) Plaintiffs allege that they have a right to tell someone *where* their downed deer has been found using a drone.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.

DATED:  March 15, 2024.

Respectfully submitted,

DONNA G. MATIAS
ANDREW QUINIO
Pacific Legal Foundation

By  /s/ Andrew Quinio
ANDREW QUINIO CSB#288101

*Attorneys for Plaintiffs* MIKE YODER,
DRONE DEER RECOVERY LLC, and
JEREMY FUNKE

## CERTIFICATE OF COMPLIANCE

As required by L. Civ. R. 7.2(b)(ii), the number of words in this brief as defined by L. Civ. R. 7.2(b)(i) is 5,223. The brief was prepared using Microsoft Word for Office 365.

DATED: March 15, 2024.

Respectfully submitted,

/s/ Andrew Quinio
ANDREW QUINIO CSB#288101
Email: AQuinio@pacificlegal.org
DONNA G. MATIAS, Cal. Bar No. 154268
Email: DMatias@pacificlegal.org
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747