IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MIKE YODER, DRONE DEER RECOVERY MEDIA, INC., and JEREMY FUNKE,

    Plaintiffs,

v.

SCOTT BOWEN, in his official capacity as Director of the Michigan Department of Natural Resources,

    Defendant.

No. 1:23-cv-00796

HON. PAUL L. MALONEY

---

Donna G. Matias Cal. Bar No. 154268
Andrew Quinio Cal Bar No. 288101
Attorneys for Plaintiffs
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, CA 95814
(916) 419-7111
dmatias@pacificlegal.org
aquinio@pacificlegal.org

Nathan A. Gambill (P75506)
Echo Aloe (P86363)
Assistant Attorneys General
Attorneys for Defendant
Environment, Natural Resources, and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
gambilln@michigan.gov
aloee1@michigan.gov

/

# DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS UNDER RULES 12(B)(1) AND 12(B)(6)

Nathan A. Gambill (P75506)
Echo Aloe (P86363)
Assistant Attorneys General
Attorneys for Defendant
Environment, Natural Resources, and Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
gambilln@michigan.gov
aloee1@michigan.gov

Dated: April 5, 2024

## TABLE OF CONTENTS

Page

Table of Contents ...................................................................................................... i

Index of Authorities ................................................................................................. ii

Introduction .............................................................................................................. 1

Argument .................................................................................................................. 2

I. Neither Michigan's statute, nor the DNR officials' alleged interpretation of it, regulates speech. ............................................................. 2

II. Plaintiffs do not allege that their conduct is expressive conduct, and Michigan's statute would survive intermediate scrutiny even if they did. ................................................................................................................ 5

III. Michigan's drone law does not ban the type of "input" to speech that is protected by the First Amendment. ............................................................. 7

Conclusion and Relief Requested ............................................................................ 9

## INDEX OF AUTHORITIES

Page

**Cases**

*City of Ladue v. Gilleo,*
   512 U.S. 43 (1994) ............................................................................................................. 9

*Lichtenstein v. Hargett,*
   83 F.4th 575 (6th Cir. 2023) ........................................................................................... 5, 6

*Nat'l Press Photographers Ass'n v. McCraw,*
   90 F.4th 770 (5th Cir. 2024) ........................................................................................... 5, 8

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.,*
   547 U.S. 47 (2006) ............................................................................................................. 4

*Zemel v. Rusk,*
   381 U.S. 1 (1965) ........................................................................................................... 7, 8

## INTRODUCTION

Plaintiffs are not able to show that the law they challenge regulates speech. Michigan's ban on the use of drones only regulates the use of drones to locate game. It does not prohibit Mr. Yoder or DDR from communicating with Mr. Funke in any way. Nor has any DNR official pledged to punish Mr. Yoder or DDR for sending information to Mr. Funke. Plaintiffs have attempted to transform a law prohibiting conduct into a law prohibiting speech by talking about the conduct—which is a tactic both this Court and the Supreme Court has rejected.

Plaintiffs also argue for the first time that their use of a drone is expressive conduct protected by the First Amendment—which is not what they allege in their complaint. Regardless, Plaintiffs' use of a drone to locate deer is not "inherently expressive" because there is no audience to view the conduct that would immediately understand the message. And even if drone use was inherently expressive, Michigan's ban on drones survives the intermediate scrutiny standard that applies to laws regulating expressive conduct.

Finally, contrary to Plaintiffs' argument, the Supreme Court has long rejected the theory that laws prohibiting conduct implicate the free speech clause simply because they make it less convenient for a person to obtain information they seek. The Fifth Circuit rejected Plaintiffs' identical argument just a few months ago in another drone case, and there is no reason this Court should rule differently.

# ARGUMENT

## I. Neither Michigan's statute, nor the DNR officials' alleged interpretation of it, regulates speech.

Plaintiffs state that their speech that is protected by the First Amendment is their "right to tell someone where their downed deer has been found using a drone." (PageID.148, n. 5.)  Michigan does not regulate that speech.

As Plaintiffs allege, their deer-locating business unfolds in essentially two steps.  First, they use "eye in the sky" type technology over an outdoor area to locate a deer and determine whether it is dead or will die soon.  (PageID.86, ¶¶ 13, 26–27.) It is "only" if the pilot determines from the live feed that "the deer is dead or . . . will be dead by the next morning" that the service proceeds to the second step. (PageID.86, ¶¶ 13, 29.)  In the second step, Plaintiffs' "drones then create a 'location pin' with the deer's location coordinates, and the pilot will relay that tag to the hunter." (*Id*.)  The "creation and dissemination" of this location pin to its clients is what Plaintiffs allege is "speech" protected by the First Amendment.  (PageID.91, ¶ 41.)

But as Defendant explained in detail, neither Michigan's statute nor DNR officials' interpretation of it seeks to regulate the *second* step of Plaintiffs' service, which is the part of Plaintiffs' service that they allege entails "speech." (PageID.108–109, 114–116.)  That is, Michigan's statute does not make it illegal to tell a person where a deer is located, even if the deer is found by a drone.

Plaintiffs claim that Defendant "significantly misunderstands" and "mischaracterizes" their allegations by stating that Plaintiffs are asserting a right

2

"to tell someone else that they located a deer with a drone." (PageID.135, PageID.144.) What they allege, Plaintiffs claim, is the "right to tell someone *where* their downed deer has been found using a drone." (PageID.148, n. 5.) This clarification does not advance Plaintiffs' argument.

Defendant's point is that neither Michigan law nor DNR officials' interpretation of the law prohibits Mr. Yoder or DDR from communicating information to Mr. Funke—whether they tell him that they found the deer he shot, or whether they tell him the location of the deer he shot. Indeed, Defendant *wants* hunters to collect the deer they shoot. Mr. Funke can hire whoever he likes to find his deer for him. Mr. Yoder or DDR or anyone else is free to locate the deer on foot, using dogs, or using trail cameras, and then send the location pin to Mr. Funke. Even if Mr. Yoder or DDR violates the statute and locates the deer with a drone, the law *still* does not forbid them relaying that information to Mr. Funke. Michigan's statute does not regulate anything about speech.

Plaintiffs promptly concede that "[n]othing in the text of the Drone Statute prohibits . . . the gathering and transmission of location information." (PageID.132.) But they still insist that DNR officials' "application" of the statute is what offends the free speech clause. (PageID.138.) They say that DNR officials' application of the statute "bans Mr. Yoder from communicating the speech he creates." (PageID.138.) Specifically, Plaintiffs claim that if "Mr. Yoder shares . . . location information . . . with hunters," then DNR officials "will punish him" for doing so by forcing him to pay "a fine or charg[ing] him with a misdemeanor."

3

(PageID.138.) No, they will not—as Defendant explained in detail. (PageID.108–109, 114–116.)

DNR officials do not ticket or punish people for "sharing location information" with a third party and have not expressed any intent to do so. It is not against the law in Michigan for Mr. Yoder to communicate the speech he creates to his clients—which is the second step of Plaintiffs' business operation. If Mr. Yoder performs the first step of his operation and uses a drone to locate a deer and then does not reach the second step because he determines that the deer is not going to die, he has still broken the law—without "speaking" or otherwise implicating the free speech clause in any way.

As Defendant explained, Plaintiffs' inability to demonstrate that the law they challenge regulates speech means the "inquiry ends" since the law does not implicate the free speech clause. (PageID.113.) Just because Plaintiffs wish to tell someone that what they did (by sending their client a location of the deer they located using an unlawful method), does not transform their conduct into speech, any more than the apple vendor announcing its business practice online transforms the business practice into speech. (PageID.115.) Otherwise, "a regulated party could always transform conduct into 'speech' simply by talking about it." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 66 (2006).

4

## II. Plaintiffs do not allege that their conduct is expressive conduct, and Michigan's statute would survive intermediate scrutiny even if they did.

Plaintiffs argue for the first time that even if Michigan law does regulate conduct rather than speech, the conduct of flying their drone is still "expressive activity" protected by the First Amendment and is thus subject to strict scrutiny. (PageID.141.) That is not what Plaintiffs allege in the complaint. And it is incorrect for two additional reasons.

First, flying a drone is not inherently expressive, which is what the Fifth Circuit recently held. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 787 (5th Cir. 2024). To be the type of inherently expressive conduct protected by the First Amendment, the "actor must intend to express a particularized message by engaging in the action" and there must be a "high likelihood . . . that the audience who sees the action will understand its message." *Lichtenstein v. Hargett*, 83 F.4th 575, 594 (6th Cir. 2023) (citations omitted). Neither Mr. Yoder nor DDR alleges that they intend to express any particularized message to anyone by flying a drone to locate deer, that there are viewers watching their use of the drone, or that those viewers will understand the message without further explication. Indeed, as explained above, the speech Plaintiffs allege is protected by the First Amendment is unrelated to the use of the drone. They allege that it is their communication with their client, after the drone is flown, that is protected, and Michigan law does not regulate that communication.

The second reason Plaintiffs' argument is incorrect is that, even if they were alleging that their use of the drone was expressive conduct, Michigan law

5

regulating the conduct would only be subject to intermediate scrutiny, not strict scrutiny. *Lichtenstein*, 83 F.4th at 583–584. And Michigan's statute survives intermediate scrutiny. The Sixth Circuit explained in detail that intermediate scrutiny "falls much closer to the deferential rational-basis test than the demanding strict-scrutiny test." *Id*. at 596–601. The government need not "make an evidentiary showing that the harm caused by the prohibited conduct is real" to survive intermediate scrutiny, which is why courts routinely rule on the issue "[e]ven at the pleading stage" of a case. *Id*. at 596–599 (citations omitted). The government can instead "rely on highly general interests that are obviously important," or courts can "rely on prior cases that have already treated the cited interests as important." *Id*. And to show that "the means (the conduct ban)" is adequately related to "the ends (the government interest)," the government need only show that "the interest would be achieved less effectively without the ban." *Id*. at 589 (citation omitted).

In this case, Plaintiffs cannot dispute that the State's management of the taking of Michigan's wild animals is a "general interest" that is "obviously important." Defendant already explained this interest. (PageID.103.) Defendant also explained why Michigan implemented the ban on using drones to take deer. (PageID.104–105.) It was to make the law consistent with a longstanding ban on using airplanes to take game and to ensure that the taking of game in Michigan continued to "be consistent with fair chase principles," which require that animals have a fair chance to escape from hunters. (*Id*.)

6

And Michigan cannot allow drones to take animals in some ways but not others without opening the door to virtually all drone use. For example, it would be impossible for DNR conservation officers to tell the difference between drone pilots using drones to spot for deer to shoot, and drone pilots using drones to find deer that have already been shot. Thus, Michigan's interest in managing its wild animals consistent with the principles of fair chase "would be achieved less effectively" if it could not ban the use of drones for all taking. So, even if Plaintiffs alleged that what is protected is their expressive conduct rather than speech (they do not), and even if the use of a drone was inherently expressive (it is not), Michigan's ban on the use of drones to take game would still stand because it satisfies the intermediate scrutiny standard.

### III. Michigan's drone law does not ban the type of "input" to speech that is protected by the First Amendment.

Plaintiffs further argue that their use of a drone is an "input" to their speech since it is the way they have chosen to gather the information they sell to their clients, and they claim that the Supreme Court applies strict scrutiny to any law regulating "input" to speech. (PageID.141.) That is not correct.

Contrary to Plaintiffs' argument, the Supreme Court has held that the "right to speak and publish does not carry with it the unrestrained right to gather information." *Zemel v. Rusk*, 381 U.S. 1, 17 (1965). Indeed, as Defendant explained, the Fifth Circuit in *McCraw*, citing *Zemel*, rejected Plaintiffs' exact argument. (PageID.118.) Plaintiffs argue that the Texas law at issue in *McCraw* is

7

"significantly different" from the Michigan law because the Michigan law "limits what an individual may do with a drone, not where they can operate it." (PageID.141.) But that is a distinction without a difference. The Texas law prevented journalists from using a drone above sensitive areas—that is very much a limitation on what the journalists could "do" with a drone. The drone operator in *McCraw* argued that since they used their drones to take pictures, the ban on flying drones over sensitive areas "*necessarily* prohibits photojournalists from capturing images from the air directly over those facilities." *McCraw*, 90 F.4th 770, 788. The Fifth Circuit determined that the argument was an unsuccessful "attempt to convert" the regulation of conduct "into speech regulations," and held that "[b]ecause the [flight restrictions had] nothing to do with speech or even expressive activity, they [did] not implicate the First Amendment." *Id*.

In short, making it less convenient to obtain information does not mean a law prohibiting conduct is transformed into a law prohibiting speech. As the Supreme Court put it: there "are few restrictions on action which could not be clothed by ingenious argument in the garb of decreased data flow." *Zemel*, 381 U.S. at 17. The free speech clause does not bar the White House from limiting access to its offices, even if doing so makes it harder for reporters to obtain the information they would like to publish in articles. *Id*. The free speech clause does not prohibit Texas from banning the use of drones above certain locations, even if it makes it harder for reporters to gather information about those locations. *McCraw*, 90 F.4th at 788. And the free speech clause does not prohibit Michigan from banning the use of

8

drones to take animals, even if it makes it harder for Plaintiffs to obtain the information they want to sell to their clients.

Plaintiffs also cite the *City of Ladue* case in support of their claim that any "inputs" to speech are subject to strict scrutiny. (PageID.141.)  But that case does not apply here.  In the *City of Ladue*, the city banned residents from placing signs outside their home unless they fell within an exception to the ban—and political, religious, or personal signs did not fall within an exception.  *City of Ladue v. Gilleo*, 512 U.S. 43, 45 (1994).  The law directly regulated speech.  The Court determined that "residential signs have long been an important and distinct medium of expression" and the city had "totally foreclosed that medium to political, religious, or personal messages," which was not permissible under the First Amendment.  *Id*. at 54–58.  In this case, the drone statute does not ban speech at all, let alone eliminate an entire medium of communication about political and religious topics originating from private homes.

## CONCLUSION AND RELIEF REQUESTED

Because the law Plaintiffs challenge does not regulate speech or expressive conduct, it does not implicate the free speech clause.  Accordingly, Plaintiffs do not have a case, and the Court should dismiss Plaintiffs' complaint for several reasons, including that Plaintiffs' lack standing, have failed to avoid DNR's Eleventh Amendment immunity, and have failed to state a claim.  (PageID.110–116.)

9

                                                              Respectfully submitted,

                                                              */s/ Nathan A. Gambill*
                                                              Nathan A. Gambill (P75506)
                                                              Echo Aloe (P86363)
                                                              Assistant Attorneys General
                                                             Attorneys for Defendant
                                                             Environment, Natural Resources, and Agriculture Division
                                                             P.O. Box 30755
                                                             Lansing, MI 48909
                                                             (517) 335-7664
                                                             gambilln@michigan.gov
Dated:  April 5, 2024                           aloee1@michigan.gov

LF:  Yoder, Drone Deer Recovery (v DNR) WD/AG# 2023-0383182-A/Defendant's Reply in Support of Motion to Dismiss 2024-04-05

10

## CERTIFICATE OF COMPLIANCE

As required by LCivR 7.2(b)(ii), the number of words in this brief as defined by LCivR 7.2(b)(i) is 2,383. The brief was prepared using Microsoft Word for Office 365.

Respectfully submitted,

/s/ *Nathan A. Gambill*
Nathan A. Gambill (P75506)
Echo Aloe (P86363)
Assistant Attorneys General
Attorneys for Defendant
Environment, Natural Resources, and
Agriculture Division
P.O. Box 30755
Lansing, MI 48909
(517) 335-7664
gambilln@michigan.gov

Dated: April 5, 2024    aloee1@michigan.gov